WEST VIRGINIA PUBLISHING COMPANY *v.* W. W. TRENT, *State Superintendent of Free Schools*

(No. 7744)

*and*

AMERICAN BOOK COMPANY *v.* W. W. TRENT, *State Superintendent of Free Schools*

(No. 7763)

Submitted September 7, 1933. Decided September 12, 1933.

*Steptoe & Johnson, H. B. Lee* and *R. A. Blessing,* for relators.

*Homer A. Holt,* Attorney General, *Ira J. Partlow,* Assistant Attorney General, and *R. H. Casto,* for respondent.

WOODS, JUDGE:

The West Virginia Publishing Company seeks, by mandamus, to require the state superintendent of schools to notify each county superintendent of the state, in accordance with Code 1931, 18-2-10 (d), that Conley's "West Virginia Yesterday and Today" has been adopted by the state board of education and that said book is to be sold at the price of $1.27 per copy, on the theory that the resolution of the state board of education, adopted June 22, 1932, and its purported contract with said publishing company in pursuance thereof, each specifically limited to a one-year period, were, by virtue of Code 1931, 18-2-10, in fact a five-year adoption and contract, respectively.

The respondent takes the position that the resolution and contract were either for one year only, or void for want of authority. In his answer he sets up, among other things, that the board upon its meeting had heard various publishers of

the state, who asked that no contract be made for more than one year, and that in the meantime a company would be organized which would make the school books that were necessary for the use of the state at a greatly reduced rate from those now in use. The board being doubtful of the legality of such action requested an opinion from the attorney general. That official's reply was to the effect that inasmuch as this Court had held in *State Board of Education v. Hudson, Judge*, 112 W. Va. 365, 164 S. E. 296, that the adoption theretofore made within the statutory period was void in so far as English, History, Readers, and Civics were concerned, that the state could likely enter into a contract with book concerns for a period of one year, which could be renewed by the board for each succeeding year up to five years. The board acting upon such advice, on June 22, 1932, adopted and entered a resolution upon their records, making adoptions for a period of one year. Relator was furnished a copy of the resolution, and agreed to accept, and later affixed its name to, a contract drawn in accordance therewith, and gave a bond in the penalty provided by statute, for the term of one year.

The contract contains the following typewritten provision: "Said textbooks and each of them are hereby adopted for uniform and exclusive use in the said free schools of the State of West Virginia for the period of one year next after the first day of July, 1932, and the same are so adopted subject to the right and option of this Board which is hereby expressly reserved, annually to extend such adoption and the term of any contract that may be made pursuant thereto with the publishers of said books, for successive periods of one year, such extension not to exceed a maximum period of five years from July 1, 1932, and the exercise of such right or option by the Board to be subject to any enactment which the Legislature may make at any time during such five-year period dealing with the adoption of textbooks for use in the free schools of the State."

The section of the Code 1931 (18-2-10) involved is as follows:

"The state board of education shall adopt textbooks for uniform and exclusive use in the public

schools of the State, except as hereinafter provided, such adoptions to be made subject to the following restrictions and provisions: * * *

(b) All bids shall be opened by the state board of education in executive session. After considering the subject matter, printing, binding, general suitableness and prices of books submitted, the board shall, on or before the first Tuesday in May, nineteen hundred and twenty-seven, and every fifth year thereafter, adopt one book, or one series of books, and only one, on each subject required to be taught in the elementary schools, for uniform and exclusive use in the free schools of this State, except in classified high schools and in towns and cities which have a population of thirty-five hundred or over. * * * When selections and adoptions of books have been properly made, it shall be the duty of the state board of education to execute contracts therefor with the publishers thereof for a period of five years, beginning with July first following, each publisher being required to enter into bond of not less than ten thousand dollars to be approved by the state board of public works. * * * Should any successful bidder fail to contract, or if, for any cause, any book or books adopted cannot be secured, the state board shall proceed at once to the selection and adoption of other books in lieu thereof.''

Is the action of the board valid thereunder? And, if so, did it operate to extend the same for a five-year period?

The case of *Griggs et al. v. Board of Education of Atlanta* (Ga.), 90 S. E. 48, is cited to sustain relator's contention that both the adoption and contract in the instant case were, by virtue of the statute, extended for a period of five years.

In the *Griggs* case the municipal authorities of the city of Atlanta had passed an ordinance in 1898 requiring the board of education, in compliance with the duty then resting upon it, to carefully consider and adopt textbooks to be used in the public schools of that city, ''and that, having done so, said Board shall not have the power to change any of said textbooks in any grade before the expiration of five years, and said Board *shall have the right every five years thereafter to change textbooks.*'' An adoption was made July 22, 1915, for a period of four years. This adoption appears to have been made sometime after the expiration of five years from a

previous adoption of textbooks. The board, in making such adoption, was apparently attempting to bring it within the five-year cycle. The court, in a syllabus opinion, there held that the evident purpose of the ordinance was to direct the board to adopt textbooks and, after such adoption, to prevent it from making any changes before the expiration of five years therefrom; and that the clause, which we have italicized was intended to carry out the same purpose, and in so far as it imposed a duty upon the board to make adoptions after the first one, was directory in character. That suit was apparently brought by certain patrons, as the court stated specifically that no question as to the existence or legality of any contract between the board of education and either of the publishing houses to use the books of such publisher for any definite period was there involved, but only the construction of the municipal ordinance in regard to the matter of adopting textbooks by the board of education and the time within which they could be changed.

But are we confronted with such a state of facts here? The board in the instant case, instead of intending to make a five-year adoption—to make an adoption extending to the end of the five-year period—was actually attempting to avoid such a possibility. The relator was conversant with this fact and accepted a contract in conformity therewith.

Would this Court, under such circumstances, be warranted in reading into the adoption and the contract, a five-year period? We held in *Board of Education v. Hudson, supra,* that the state board is purely a creation of the legislature and can act only within its delegated powers. The statute, heretofore quoted, expressly authorizes but one adoption every five years. The only other adoptions authorized are in cases (1) where the bidder fails to contract, and (2) where there is an impossibility of securing any textbook adopted. In view of the statute, the inference is that no other adoptions or changes are provided for. Furthermore, the statute, in the interest of the public welfare, guards carefully against too many and too frequent changes in the books. Under our decision in the *Hudson* case, *supra,* any act outside of the board's delegated powers is subject to judicial interference. *Ultra vires* con-

tracts are, strictly speaking, those only which are defective solely because they are beyond the powers of the corporation. Page on Contracts, sec. 1084. The action of the board in its resolution was beyond the powers conferred by the statute, and likewise the contract thereunder was in excess of authority and of no effect and void. As this contract affects the public, it is incapable of ratification by the relator. *Bank v. County,* 28 W. Va. 294.

The relator has failed to show a clear legal right to performance of a duty and plain duty to perform; hence the writ is denied. *State ex rel. Smith v. County Court,* 78 W. Va. 168, 88 S. E. 662.

In the *American Book Company* case a similar contract was entered into in accordance with the resolution of June 22, 1932, and on August 3, 1933, the board adopted a resolution authorizing and directing the state superintendent to renew relator's contract for a period of one year, "but upon the express condition that such renewal shall not in any manner be construed to prohibit the exchange and use by any pupil in any public school of any textbooks now in use in this state." A proposal was forwarded the publisher by the state superintendent for its endorsement. Relator affixed his signature, "subject to attached letter". Prior to such qualified acceptance the state superintendent had mailed out to the county superintendents a list of basal textbooks adopted for elementary schools. The purpose of this proceeding in mandamus is to require the state superintendent to send out new notices in accordance with relator's theory of the import of the board's resolution. In view of our holding in the *West Virginia Publishing Company's* case, the resolution of 1933 had no higher standing than that of 1932; hence, assuming relator's interpretation of the resolution to be proper, it has no standing in this Court, and the writ must accordingly be denied.

*Writs denied.*