# CHARLESTON.

L. K. VINSON et als. v. COUNTY COURT et als.

Submitted October 11, 1923.   Decided October 16, 1923.

1.  TAXATION—*Equity Will Enjoin Laying and Collection of Tax, if Levying Body Has no Power to Impose It.*

    Equity will entertain a bill filed by tax payers in behalf of themselves and all others similarly situated who are to suffer by the imposition of a tax, for the purpose of enjoining the laying and collecting of the tax, if the bill shows that the levying body has no power or authority to impose the tax. By such bill a multiplicity of suits will be avoided. (p. 595).

2.  COUNTIES—STATUTES—*Repeal by Implication Never Favored; Law Providing for Special Levy in Counties Where Court-house or Jail Destroyed Held not Repealed by Law Providing for Levy in Counties, School Districts, etc.*

    Repeal of statutes by implication is never favored. Chapter 92, Acts 1915, has not been repealed by chapter 126, Acts 1919. (p. 595).

3.  STATUTES—*Acts Conferring Power to Lay and Collect Taxes for Public Purposes Strictly Construed; Power to Lay and Collect Taxes for Public Purposes Only Conferred by Plain and Unambiguous Language; Doubt or Ambiguity From Use of Phrases in Act to Lay and Collect Taxes for Public Purposes Resolved in Favor of Public.*

    Acts of the legislature conferring power to lay and collect taxes for public purposes are strictly construed; and the power can only be conferred by the use of plain and unambiguous language. Any doubt or ambiguity resultant from the words or phrases found in the act will be resolved in favor of the public; and especially is this rule applicable when a different construction would completely reverse a long standing legislative policy. (p. 598).

4.  COUNTIES—*County Court Unauthorized to Lay Special Levy to Construct Court-house, Unless Statutory Levies Insufficient.*

    Chapter 158, Acts 1921, properly construed together with chap. 60, Acts 1917, chapter 92, Acts 1915 and chap. 34, Acts 1911, does not authorize a county court to lay a special levy in order to construct a court house which has been begun since the passage of the first named act, unless the levies provided for in chap. 92, Acts 1915, have been or can be levied and are insufficient. (p. 598).

Appeal from Circuit Court, Wayne County.

Suit by L. K. Vinson and others against the County Court of Wayne County and others. From an order sustaining a demurrer to the bill, and dissolving an injunction, plaintiffs appeal.

*Decree reversed, injunction reinstated and perpetuated, and cause remanded.*

*Darnall & Lovins* and *Poffenbarger, Blue & Dayton,* for appellants.

*C. W. Ferguson* and *John T. Simms* and *Harold A. Ritz,* for appellees.

LIVELY, JUDGE:

On August 25, 1923, plaintiffs, citizens and taxpayers of Wayne county, on behalf of themselves and all others similarly situated, presented their bill to the judge of the circuit court praying for an injunction to inhibit the county court from laying a special levy of 15 cents on the $100 valuation for the purpose of constructing or completing a new court house; and also to enjoin the laying of a 25-cent levy for county road fund purposes and to prevent a proposed levy for county purposes because of the inclusion in the estimate therefor of invalid orders, contracts and claims amounting to $52,662.00, and asking for a discovery from the county court of the county indebtedness and for what purposes contracted. The injunction prayed for was refused, but upon application to a judge of the supreme court a temporary injunction was granted on the 27th of August, 1923, only to prevent the county court from imposing on the taxpayers the 15 cents special levy for the construction and completion of the court house. On September 13, 1923, the county court filed its demurrer and answer in open court, and moved a dissolution of the injunction. The court sustained the demurrer and the injunction was dissolved. This appeal was awarded from this order dissolving the temporary injunction against the imposition of the 15-cent levy; and being a case of urgent public necessity its hearing has been expedited by agreement of the parties and consent of the court.

Defendants assert that the decree should be sustained because plaintiffs have a plain, adequate and complete remedy at law under sec. 1, chap. 110, Code; and because the bill is multifarious in seeking to enjoin the special levy for the court house, the levy for county road purposes and general county purposes, and for discovery. Defendants also assert that the county court acted within its authority in laying the proposed levy of 15 cents by virtue of sec. 1, chap. 60, Acts 1917, and by sec. 1, chap. 158, Acts 1921. Plaintiffs assert that the bill is not multifarious; that injunction will lie to prevent an illegal levy; and that the county court has no power or authority to lay an extra levy of 15 cents under chap. 158, Acts 1921.

It will be noted that the decree appealed from sustained the demurrer to the bill and dissolved the injunction which was awarded only to the laying of the 15-cent special levy for the court house. The main controversy is over the legality of this extra court house levy; and is to be solved by a consideration and construction of the acts of the legislature above referred to and upon which each of the litigants relies. There has been no injunction to prohibit the laying of any of the levies to provide for payment of any of the sums set out in the budget of the county court except the extra 15-cent levy for court house purposes; and so far as the record discloses the other levies have been made. As was indicated by the refusal of the judge of this court who granted the temporary injunction to apply the same to any other item except that of the extra levy for court house purposes, we do not regard the allegations of the bill sufficient to prohibit the laying of the levy for the other purposes set out in the budget. We do not think the bill is multifarious. *Moorehead* v. *New River Power Co.*, 91 W. Va. 277. Equity has jurisdiction to entertain a bill by a taxpayer, suing for himself and all others similarly situated, to enjoin the laying of a levy for which there is no legal authority. *Turkey Knob Coal Co.* v. *Hallanan*, 84 W. Va. 402.; *Bull* v. *Read*, 13 Grat., 78; *Corrothers* v. *Board*, 16 W. Va. 541; *Williams* v. *Co. Court*, 26 W. Va. 488; *Lynchburg* v. *Dameron*, 95 Va. 545; 1 Pom. Eq. sec. 260. Has the county court the right to lay

this extra levy for the building and repairing of the court house? This is the controlling question, and to which the eminent counsel have devoted their oral arguments and able briefs.

The Wayne county court house was destroyed by fire about the first of October, 1921, and at the levy term of the county court in 1922 it attempted to lay an extra levy for the purpose of building a new court house by virtue of chap. 158, Acts 1921, which became effective March 17, 1921, and attempted to let the building to contract on the same site, but upon the bill of citizens and taxpayers the laying of that levy was enjoined on the ground that the Act of 1921 did not apply to the then situation because the construction of the court house had not been begun; and because application had been made to the voters for a submission of the question of changing the location of the county seat, or perhaps an election had been called for that purpose. The extra levy proposed at the levy term 1922 was 25 cents on the $100 valuation, which was enjoined; and an attempt was made by supplemental bill to enjoin the general county levy in the estimates for which was included an item of $30,000 for "Repairs, construction new court house." This item was not enjoined, and presumptively was levied and collected. Afterwards, the location of the county seat having been fixed and determined by the election, the construction of the court house began; and as above stated, at the 1923 levy term the extra 15-cent levy, which is the bone of this litigation, was proposed to be laid for the purpose of raising about $48,000 with which, together with $30,000 to be raised as an item under the general county levy, the court house would be built. Because the extra levy of 25 cents attempted to be laid in 1922 was enjoined, plaintiffs assert that the levy of 15 cents now in controversy has been adjudicated and determined, and set up the decree in the former injunction suit as a bar to this proceeding. It is clear to us that that decree is not a bar. The situation has changed, and the facts are different from those which were in existence at the time of the former injunction. At that time it was reasonably clear that an extra levy could not be laid under the provisions of

chap. 158, Acts 1921, because the construction of the court house had not been begun. Neither the letter nor the spirit of that act would then justify the attempted extra levy. As above stated, authority to lay and collect the extra levy is predicated on Acts 1921, chap. 158, which reads: "That the county court of any county wherein the construction of a new court house has been begun, or any court house now in use is in need of permanent repairs, and for which the levies provided for in chapter ninety-two of the acts of the regular session of one thousand nine hundred and fifteen will not raise sufficient money to complete such court house, or make permanent repairs to any court house now in use, may, in addition to the levies provided for in the chapter aforesaid, lay a special building levy annually, not to exceed thirty cents on the one hundred dollars valuation on the taxable property in said county, for such number of years as may be necessary, for the sole purpose of raising funds to complete such new court house, or to make permanent repairs to any court house now in use."

This act is an amendment and re-enactment of sec. 1, chap. 60, Acts 1917, and the only amendment made is the time over which the levy may extend. The original act of 1917 limited the levy to two years only, whereas the amendment of 1921 extended it "for such number of years as may be necessary." Sec. 2 of the act of 1917, which repeals all acts or parts of acts coming within the purview and in conflict therewith, but, providing that nothing in the act shall be construed to repeal the provisions of chap. 92, Acts 1915 (which chapter is referred to in sec. 1 above quoted), is left intact by the re-enactment statute of 1921. Chap. 92, Acts 1915, expressly referred to in the 1921 statute, must be considered in order to ascertain what levies were therein provided, for what purpose, and what weight or significance it may have, by being expressly mentioned in the acts of 1917 and 1921. The act of 1915 amended and re-enacted chap. 34, Acts 1911, which authorized a special levy of not to exceed 20 cents for three consecutive years for creating a fund to rebuild a court house or jail destroyed by fire, or other calamity, in counties where the levy for county and

district purposes was not in excess of 30 cents and where there was no bonded or funded indebtedness. The amendment of 1915 enlarged the purpose for which the levy could be laid by including court houses and jails which had become unsafe or unfit for use or in need of repair. Up to the year 1917, no special levy could be laid to rebuild a court house or jail unless there had been destruction by fire or calamity or either or both had become unsafe or unfit for use or in need of repair, except in counties where the levy for county and district purposes did not exceed 30 cents and there was no bonded or funded debt. Since the formation of the state and up to 1911 the method of building and repairing court houses and jails was by the regular levy for general county purposes, or by issue of bonds authorized by the voters. All of the court houses had been erected in that way. The act of 1911 was the first innovation on this policy, and the special levy was carefully limited to counties which had no bonded or funded indebtedness, and where the county and district levies did not exceed 30 cents. Then came the act of 1917, amended by Act 1921 under which defendant seeks to justify the legality of the 15-cent special levy in question. It is now asserted that by virtue of this act any county (whether indebted or not), wherein the construction of a new court house has been begun or wherein the court house is in need of permanent repairs, may lay a special levy of not to exceed 30 cents for such number of years as may be necessary to build or repair the court house. Of course, the constitutional limit for county purposes must not be exceeded; and there is no claim here that the constitutional limit has been exceeded. To so construe these acts of 1911, 1915, 1917 and 1921 would completely reverse the policy in existence since the birth of the state. The change would be radical and startling. But it cannot be questioned that the legislature would have the power to do so. Has it done so? That is the crucial inquiry. If the proposition that any county which had begun the construction of a court house, or which had a court house in need of permanent repairs, could lay a special levy not to exceed 30 cents for such time as necessary to accomplish the object of the special levy, was clearly and

unequivocally stated in the act of 1921, then there would be no use to invoke the rules of statutory construction to arrive at the intention of the legislature. We are asked to eliminate the words in the statute, namely, "and for which the levies provided for in chapter ninety-two of the acts of the regular session of one thousand nine hundred and fifteen will not raise sufficient money to complete such court house, or make permanent repairs to any court house now in use, may, in addition to the levies provided for in the chapter aforesaid," lay the special building fund levy of not to exceed 30 cents, etc., as surplusage or as having been improvidently inserted. As a basis of this argument it is pointed out that chap. 92, Acts 1915 was incorporated as sec. 11, chap. 28-A Barnes' Code of 1916, which code was adopted by the legislature as competent evidence without further proof or authentication to be known as "Code 1916"; afterwards in 1919 the legislature by chap. 126 amended and re-enacted chap. 28-A Barnes Code 1916, embracing all general laws relating to the manner of laying levies, and deliberately left out sec. 11 as contained in the chapter which was amended, thus deliberately repealing the act of 1915 (sec. 11, chap. 28-A Barnes' Code. 1916). Even if that be true and the act of 1915 was repealed we cannot ignore the words of reference to it used by the legislature in the act of 1921 under consideration. Every word of the statute must be considered in order to arrive at the true construction. As was said in *Baird* v. *Hutchinson,* 179 Ill. 435: "The meaning of the legislature must be gathered from all they have said, as well as from that which is ineffective from want of power as from that which is authorized by law." Evidently, the legislature of 1921 treated the act of 1915 as unrepealed. Then surely it could be considered in arriving at the intention whether repealed or not. But did chap. 126, Acts 1919, repeal chap. 60, Acts 1917? The same situation we have here arose in the year 1907. The legislature of 1899 passed what is called the "valued policy law," which law was afterwards incorporated in chap. 34 of the Code of 1906 as serial section 1108. The legislature of 1907, by chap. 77 of the acts of that year, amended and re-enacted

chap. 34, Code 1906, enacting a comprehensive law on insurance, and deliberately left out the "valued policy law" (serial sec. 1108) making no reference thereto. It was contended, as here, that the "valued policy law" had been repealed. This contention was denied by this court in *Hinkle* v. *Insurance Co.*, 70 W. Va. 681. A reference to page 685 of the opinion by Judge BRANNON and the cases there cited will dispose of the question of repeal here raised. It would serve no useful purpose to repeat. It will be observed that the act of 1917, in sec. 2 expressly says that the act of 1915 of the amendment of 1921 which leaves that section intact. We hold that chapter 60, Acts 1915, was not repealed by chapter 126, Acts 1919.

is not intended to be repealed, and this section 2 is a part

Statutes delegating power to any public body to lay and collect taxes are always construed strictly. The power can be delegated by the legislature only in plain and unambiguous words. *Dillon* v. *County Court*, 60 W. Va. 339; Lewis' Sutherland Stat. Con. (2nd ed.) sec. 541, p. 1008.

If we hold that simply because the construction of a court house has been begun, or one at the time of the passage of the act ("now in use") is in need of permanent repairs, a special levy not to exceed 30 cents may be laid so long as necessary to complete the projects, by the county court under the act of 1921, it would mean that practically all of the money necessary may be raised by special levy. For if the construction be begun by the laying of one stone of foundation or removal of a portion of dirt, then the special levy may step in and complete. This would reverse the policy of building and repairing court houses followed since the formation of the state. We do not think the legislature so intended. It will be observed that the levy for permanent repairs is limited to repairs for court houses *now in use*, plainly limiting the scope of the operation of the statute; and there is strength in the argument that the act was likewise intended to apply only to those court houses where the building had already been begun at the passage of the act, and to complete which the levies provided for in the act of 1915 would be insufficient. The Wayne county court house was destroyed

by fire on October 1st, 1921. The act of 1921 was passed in March of that year and was put into effect from passage. It was evidently an emergency act to relieve some urgent situation. If it was intended to apply only to court houses then begun, the special levy for court houses afterwards destroyed by fire and afterwards begun could not be laid. Why limit the permanent repairs to court houses in use at the time of the passage of the act, and extend the operation of the statute to the building of a new court house whenever begun in the future? The reason for inserting the provision, "and for which the levies provided for in chapter ninety-two of the acts of the regular session of one thousand nine hundred and fifteen will not raise sufficient money to complete such court house, or make permanent repairs to any court house now in use, may, *in addition to the levies provided for in the chapter aforesaid, lay a special building levy,*" etc., is hard to determine. Their use would seem to imply that the special levy could not be laid except for the purpose of completing a court house or making permanent repairs to a court house then in use, for which the levies provided for in the act of 1915 could be laid. This construction would comport with the former well-known policy of building and repairing court houses by the general county levy, or by bond issue. It may be that the act was designed to build any court house after construction had been begun, or make permanent repairs to any court house then in use, and that the reference to the act of 1915 was to make it clear that the court houses begun under the levies of the latter act were not barred from the benefit of the act; a construction urged by counsel for the county court. But if that was the intention it should have been stated in clear and convincing language. The rule of strict construction is against such conclusion. Even the act of 1915 allowing special levy to build court houses and jails destroyed by fire or other calamity was made to apply to those counties only where the maximum of 30 cents for general county and district purposes was not exceeded, and where there was no bonded or funded debt. The legislative policy since 1904 has been to limit levies. And it will be observed that the special levy in the Act of 1921 is equal to

the limit for general county purposes. If it applies to all of the counties wherever a court house is hereafter begun, irrespective of the county indebtedness, it would be a very radical and startling departure from the policy of restriction followed up to the time of its enactment. Plaintiffs' bill alleges that the county of Wayne had, prior to the proposed special levy, and now has a bonded indebtedness of about one million dollars. We think the language contained in the act, which authorizes the special levy in addition to those authorized by the act of 1915, where the levies thereunder authorized will not be sufficient, limits rather than enlarges the scope and object of the act; and that the special levy therein cannot be laid except in cases where the levies under the act of 1915 can be invoked. Invoking the rule of strict construction and in view of the well-known method of building and repairing court houses, and other public buildings, as well as the policy of restricting and limiting levies and not enlarging them without the sanction of the taxpayers we are constrained to hold that the special levy of 15 cents proposed to be laid by the county court is without authority of law. This will not prevent the county court from building the court house. It has already raised $30,000 by the county levy of 1922, if we read the record aright, and has provided for a like sum in the budget of county expenditures for this year, for which budget a levy of 30 cents per hundred dollars valuation is proposed to be laid.

The decree of the circuit court entered September 13, 1923, will be affirmed in so far as it sustains the demurrer to that portion of the bill seeking to enjoin the proposed levies for county and district purposes other than the special 15-cent levy for the court house; and the decree will be reversed in so far as it adjudicates that the bill is insufficient for the purpose of preventing the proposed special 15-cent levy for the construction of the court house; the temporary injunction restraining the laying of said special 15-cent levy will be reinstated, and the cause remanded.

*Affirmed in part, reversed in part; temporary injunction
    reinstated; remanded.*