EMMA H. DARNALL *et al. v.* THE BOARD OF PARK COMMISSIONERS, *etc.*

(CC 653)

Submitted September 2, 1942. Decided October 27, 1942.

788

*W. H. Darnall, Jackson W. Huddleston* and *Peyton & Winters,* for plaintiffs.

*J. Frank Eaton* and *George S. Wallace,* for defendant.

Fox, President:

This case comes to us on certification from the Circuit Court of Cabell County and raises the question of the power of the Board of Park Commissioners of the City of Huntington to assess the property of the plaintiffs, located outside the park district of Huntington, to raise a fund to meet the cost of the improvement of Washington Boulevard lying wholly within the park district. The question so raised must be determined by a construction of the statutes creating the park district of the City of Hunting-

ton, such statutes being those enacted by the Legislature of West Virginia, Chapter 26, Acts of the Legislature, Municipal Charters, 1925, as amended by Chapter 122, Acts of the Legislature, Regular Session, 1933.

The plaintiffs, Emma H. Darnall, Lucy H. Nelson and Sadie H. Solter, filed their bill at December Rules, 1940, against the Board of Park Commissioners of the City of Huntington, a public corporate body, in which they alleged that the defendant, on May 1, 1940, and without any notice to the plaintiffs, passed an ordinance providing for the pavement of Washington Boulevard east of Sixteenth Street in the City of Huntington, and extending to the intersection of said boulevard with Higgins Avenue, and provided for the assessment of the land abutting thereon at the rate of $1.50 per linear foot to meet the cost of such improvement; that in September of that year, the work was completed, and a notice was given to the plaintiffs of an assessment charge amounting to $3,292.88, and fixed the 2nd day of October, 1940, as the date when persons aggrieved by such assessment might appear before the Board of Park Commissioners and move to correct the same; that plaintiffs did appear on October 2, 1942, and protested against the assessment in its entirety in so far as it affected their property; that on October 18, 1940, an additional assessment was made against them of $123.00, to which additional assessment they protested on November 6, 1940, the two assessments so made against the property of the plaintiffs aggregating $3,415.88; that the protests against said assessments were overruled, and certificates were issued by the park board for the amount of the said assessments, the same duly recorded and that they were about to be issued and sold. The bill prays (1) for discovery to determine the exact cost of the improvement; (2) for an injunction to prevent the defendant from selling or otherwise disposing of the paving certificates issued by it against the plaintiffs' property; (3) that the assessment be declared null and void and the same set aside as a cloud upon the title to the plaintiffs' property; (4) that the certificates so issued be cancelled; and (5) that all liens assumed to be

created upon their property to secure the payment of such certificates be released.

The defendant interposed four separate demurrers to this bill. The first, styled a general demurrer, alleges that the act of the Legislature under which the defendant assumed to act makes full and ample provision against improper assessments laid thereunder, and that the failure of the plaintiffs to pursue the remedies so provided operates as a bar to the prosecution of their suit, and that the bill shows on its face that the plaintiffs had full knowledge of the improvements, for which the said assessments were made; that they failed to pursue any remedy they might have had until such improvements were completed, and by reason thereof were estopped from setting up any claim to relief against the same. The second is styled a demurrer to parts of bill, No. 1, and raises the question of the right of the Board of Park Commissioners, under the statute creating it, to make assessments for boulevard improvements on property abutting thereon, and especially benefited thereby, even though such property lies outside the corporate limits of the City of Huntington, and asserts the power of said board to lay such assessments. The third, styled a demurrer to part of bill, No. 2, asserts the power of the Board of Park Commissioners to lay the said assessments, notwithstanding the allegation in the bill that provisions of the statute creating said board requiring action on the part of the City of Huntington in designating such parks, streets, etc., as should become a part of the park system had not been complied with within the time provided therefor in such statutes. And the fourth, demurrer to parts of bill, No. 3, which challenges as a defense the allegations in the bill with respect to inequality in assessments arising from the fact that some parts of the entire project were paved for a width of forty feet, while the paving along the property of the plaintiffs was only thirty-three feet in width. The trial court overruled the general demurrer, and the demurrer to parts one and two of the bill and sustained the demurrer last mentioned above, being the demurrer to part of bill, No. 3, the result

of which holdings was that the right of the plaintiffs to maintain their suit was sustained. It was, in effect, held that the Board of Park Commissioners did not have power to assess plaintiffs' property for the improvement of Washington Boulevard; and that even if they had the power, they could not exercise it because of their failure to show that said Washington Boulevard had been designated as a part of the park system of the City of Huntington, as required by the statute creating the park board. The question of inequality in the assessments was decided in favor of the park board. The trial court, on its own motion, certified the questions raised by the demurrers to this Court.

The question raised as to the power of the Board of Park Commissioners to lay an assessment against the plaintiffs' property is decisive of the case before us. If the park board had no power to lay such assessment, its action in doing so was and is void. "Equity has jurisdiction to entertain a bill by a taxpayer, suing for himself and all others similarly situated, to enjoin the laying of a levy for which there is no legal authority." *Vinson* v. *County Court*, 94 W. Va. 591, 119 S. E. 808. So that if we hold the park board was not vested with power to lay the assessment and the same was void, there can be no doubt of the correctness of the court's action in overruling the general demurrer. We will, therefore, proceed to discuss and decide the vital question presented.

Section 1 of the act creating the Board of Park Commissioners of the City of Huntington, provides:

"The city of Huntington in the counties of Cabell and Wayne shall constitute a public park district to be known as the park district of Huntington."

And section 2 provides:

"The board of park commissioners of the city of Huntington shall be a public corporate body, and as such may purchase hold, sell, or convey, real or personal property, may receive any gift, grant, donation or devise; may sue and be sued or con-

tract and be contracted with, and do other public corporate acts; it shall have the management of and be vested with the title to all real and personal property acquired for the use of the public or use-ful to the public in the maintenance or enjoyment of all public parks, parkways, playgrounds, athletic fields, swimming pools, cemeteries and boulevards, within the district, and shall manage and dispose of the same as in its opinion will best serve the purpose of this act in the interest of the public.

"*Provided, however,* That nothing herein contained shall be construed as limiting the board of park commissioners from going beyond its territorial limits within the state of West Virginia, to lease, purchase or otherwise acquire any real estate for public parks, parkways, playgrounds, athletic fields, swimming pools, cemeteries and boulevards."

It will be observed that the limits of the park district of the City of Huntington are to be determined by the City of Huntington, a municipal corporation, and that the powers of management conferred upon the Board of Park Commissioners, as well as to take title to real and personal property acquired for public use, is confined to property "within the district," although, almost immediately following, is a provision which authorizes the park board to acquire real estate outside said district, which, we think, necessarily includes the right to take title to and manage the same.

Section 10 of the act confers upon the Board of Park Commissioners power to acquire land for the various purposes for which it was created, and confers upon it the power of eminent domain. This power extends to what is termed "the public park system," which is defined as embracing "any body of land of whatever shape or area, designated ultimately to be used for public parks, parkways, play-grounds, athletic fields, boulevards or streets, necessary to connect the same within said public park system." The park board is authorized "to construct and improve and repair public parks, boulevards, or streets, part of the public park system." And further, "to acquire, for public use, by lease or otherwise, lands either within

or without the city limits as they now exist or such limits as may hereafter be enlarged or diminished." The same section further provides that the said park board shall have the power "to cause any public boulevard, road, street or alley which is a part of the public park system to be graded or curbed or surfaced with stone, concrete or other suitable materials or paved or repaved between curbs with suitable materials, or to be graded, surfaced, resurfaced, curbed and recurbed, and paved or repaved, as aforesaid, or to be macadamized or otherwise permanently improved or repaired in the same manner and to the same extent, as similar power is conferred upon the board of commissioners of the city of Huntington by sections sixty-seven, sixty-eight, sixty-nine and seventy, chapter two, of the acts of the legislature one thousand nine hundred nineteen." It will be noted that the power conferred on the park board by section ten, from which the quotations above are taken, are made to extend to the public park system, which clearly embraces not only the parks, park-ways, boulevards, etc., lying within the City of Huntington, as well as those lying outside of the limits of the city and of the park district. There can be no doubt as to the power of the park board to acquire land outside the park district and to improve the same. The power of the legislature to confer that authority upon the park board is not, and cannot be, questioned. So we are brought to the real question at issue, and that is, whether the power conferred by the legislature upon the park board to acquire property outside of the limits of the park district and the City of Huntington for use as a part of the park system, and the power to connect the same with that part of the park system lying within the City of Huntington, includes also the power to assess property outside of the park district, for improvement purposes to the same extent that it is empowered to do so within the district.

As we understand the briefs and arguments, it is conceded that unless expressly conferred, or arising by necessary implication from powers expressly conferred, a municipal corporation, or a corporation such as the Board of

Park Commissioners, has no power to assess taxes or impose assessments upon property lying outside the limits of the municipality or other taxing district. The defendant claims that such authority is expressly conferred by statute or necessarily implied therefrom, and the plaintiffs take the opposite position. We think it devolves upon the Board of Park Commissioners to clearly establish their claim for the reason that it is fundamental that "Laws imposing taxes must be construed strictly and most strongly against the state, and all doubts must be resolved in favor of the taxpayer." 9 Digest of Virginia and West Virginia Reports, page 428, and cases there cited. Therefore, unless it plainly appears that the statutes creating and defining the powers of the Board of Park Commissioners confer this power, the position of the plaintiffs must be sustained.

We are unable to see that the statutes in question confer upon the Board of Park Commissioners of the City of Huntington the power to lay assessments on abutting property for the improvement of streets and roads against property lying outside the City of Huntington, the lines of which limit the territory of the park district of said city. Plainly, as we think, the legislature intended to limit the governmental power, if we may use that term, of the Board of Park Commissioners to the City of Huntington, with the additional and incidental power to acquire real estate lying outside of the city for purposes connected with the powers expressly conferred. The power to acquire, own and develop property outside of the city is something quite different from the power of exercising a taxing power conferred upon a municipality or park board within the city itself. The Board of Park Commissioners is an elective body, selected by the qualified voters of the park district, which is the City of Huntington. The voters of that city or district have a voice in the selection of officials who will exercise the powers conferred upon the board. In that way they have some power to circumscribe the actions of the board they have created. No such power exists as to those who own property lying

outside of the city, unless it be in a case where the owner of property located outside the city and is a resident of the city, and such a situation would be unusual. It is not necessary to decide, and we do not decide, that the legislature had power to confer upon the Board of Park Commissioners of the City of Huntington, or upon the City of Huntington itself, the right to lay assessments for street improvements on abutting property, specially benefited, lying outside the boundaries of the park district or the city. We only say that such a power, being of a doubtful nature, we cannot assume that the legislature intended to exercise the same in the absence of a clear showing of such intent. In the present instance, we do not think it had any such intent. The language employed by it does not plainly show such intent. Furthermore, the situations which might arise were we to hold that such legislative power existed, strongly argue against its exercise, or the legislative intent to do so. It may be that in the case before us, the property of the plaintiffs was benefited to the same extent as property lying on the opposite side of Washington Boulevard, and lying within the limits of the park district, but situations can easily be imagined where no benefits whatever would accrue to abutting property, and we must decide these questions, not with reference to the particular case, but having in mind the extent to which the rule which we lay down may be applied and enforced in cases of a different nature. In this connection, we must, necessarily, be governed by the boundary lines fixed; otherwise, where would we draw the line? Property lying along the line of the park district, as in this case, may be benefited, and there may be arguments of a non-legal nature in favor of their paying part of the expense of improvements which benefit their property. The situation might be different where a park or playground is located a considerable distance beyond the limits of the city or district, which, under the statute, could be acquired and roads built thereto at the expense of property owners along the highway, or who might own property adjoining the park so established. We should not estab-

lish a rule under which such a situation might arise, in the absence of clear and express legislative authority, and even then, on constitutional ground which might be amplified, we would doubt our right to do so. Taxation without representation is just as unsound today as it was in earlier periods of our history. We are of the opinion that the Board of Park Commissioners of the City of Huntington had no power to impose an assessment upon the property of the plaintiffs, and that the ruling of the circuit court in overruling the demurrer to that part of the bill which alleges this lack of power as grounds of relief, should be affirmed.

As stated above, our ruling on this point makes necessary the further ruling that the action of the trial court in overruling the general demurrer should be affirmed. It is unnecessary to pass upon the other points of demurrer. There being no right in the Board of Park Commissioners to collect any part of the assessment, the amount thereof is immaterial; and the lack of such power also makes immaterial the question of whether Washington Boulevard ever became and was a part of the park system of the City of Huntington.

The ruling of the Circuit Court of Cabell County on the general demurrer, and on the demurrer to parts of plaintiffs' bill No. 1, are affirmed. No decision is made on the other points of the demurrers passed upon by said Circuit Court for the reason that our ruling on the demurrer to parts of bill, No. 1, is decisive of the controversy.

*Ruling affirmed.*