76 S.E.2d 863 (1953)
APPALACHIAN ELECTRIC POWER CO.
v.
KOONTZ, State Tax Com'r.
C. C. No. 798.
Supreme Court of Appeals of West Virginia.
Submitted January 28, 1953.
Decided March 17, 1953.
Dissenting Opinion July 30, 1953.
*864 Campbell, McClintic, James & Wise, Charleston, Ernest K. James and E. Glenn Robinson, Charleston, for plaintiff.
John G. Fox, Atty. Gen., Joseph E. Hodgson, Asst. Atty. Gen., and George W. Stokes, Asst. Atty. Gen., for defendant.
*865 GIVEN, Judge.
Plaintiff, Appalachian Electric Power Company, an electric public service corporation, instituted its declaratory judgment proceeding in the Circuit Court of Kanawha County, for the purpose of having determined its liability as to a deficiency business and occupation tax assessment, covering the years 1945, 1946, 1947, 1948 and 1949, made by the state tax commissioner, as the result of an audit of the accounts of the company. The tax commissioner demurred to the petition, the circuit court overruled the demurrer and, upon joint motion of the parties, certified to this Court the following questions:
"1. Does Section 2(d), Article 13, Chapter 11, of the Official Code of West Virginia of 1931, as amended, impose the sole tax upon the privilege of engaging in the business of an electric light and power company within this state?
"2. May income of an electric light and power company arising from Delayed Payment Charges be lawfully included within the measure of the privilege tax provided in Section 2(d), Article 13, Chapter 11, of the Official Code of West Virginia of 1931, as amended, namely, `sales and demand charges'?
"3. May income of an electric light and power company arising from merchandising activities be lawfully levied upon under the provisions of Section 2(c) of said article?
"4. May income of an electric light and power company arising from Sales of Water, activities producing income classified as Miscellaneous Electric Revenues, Servicing of Customers' Installations and activities producing income classified as Other Miscellaneous Non-Operating Income be lawfully subjected to the privilege tax provided in Section 2(h) of said article?
"5. May the privilege tax provided in Section 2(i) of said article be lawfully imposed upon the income of an electric light and power company arising from the renting of electric properties and from leasing of non-operating physical properties?"
Code, 11-13-2d, as amended, around which the principal controversy revolves, in so far as material here, reads: "Upon any person engaging or continuing within this State in any public service or utility business, * * * there is likewise hereby levied and shall be collected taxes on account of the business engaged in equal to the gross income of the business multiplied by the respective rates as follows: * *; electric light and power companies, four per cent on sales and demand charges for domestic purposes and commercial lighting and three per cent on sales and demand charges for all other purposes, * * *."
Section 2c of the same article provides that every person engaging or continuing within this State in the business of selling any tangible property whatsoever, shall pay "a tax equivalent to one-half of one per cent of the gross income of the business, * * *." Section 2h of that article reads: "Upon every person engaging or continuing within this State in any service business or calling not otherwise specifically taxed under this law, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business." By Section 2i of that article, a tax of one per cent is levied "Upon every corporation or association engaging or continuing within this State in the business of collecting incomes from the use of real or personal property or of any interest therein, * * *."
The principal income of the company is from sales of electric energy. It also receives certain income from what may be described as delayed payment charges, which are additional charges collected from its customers who fail to pay the charges for electric energy within a fixed time. Other income is received by the company from sources such as sales of tangible property, rent of properties of the company not continuously used or immediately required in its utility business, sales of water, servicing of customers' installations, and certain other non-utility businesses. For the years material, the company reported and paid the tax assessed, under Section 2d, on sales of electric energy, as "sales and demand charges". It reported and paid the tax on that part of its income designated as "delayed payment charges", not as "sales and demand charges", but as income taxable *866 only under Section 2h, as a "service business or calling not otherwise specifically taxed", at the lower rate. It reported and paid the tax on its other income at the rates provided either in Section 2c, 2h, or 2i.
For each of the years involved, the company's income from delayed payments amounted to $27,108.06, $13,277.73, $17,299.53, $21,373.05 and $28,913.24, respectively. From the audit made by the tax commissioner, after certain justifiable adjustments as to the respective amounts, there was found to be due the State the amount of $5,517.92, which sum included penalties amounting to $1,436.60. The amount alleged to be owing was determined by taxing the company, as to such "delayed payment charges", at the rate provided in Section 2d, or as being included within "sales and demand charges", and deducting from the amount of tax so found to be due the amounts paid by the company, at the lower rates, for the respective years.
The income reported by the company for each of the years involved as having been received from sales of tangible property, upon which it paid the tax provided by Section 2c, less justifiable deductions, was $4,088.12, $50,617.43, $107,614.28, $158,880.13 and $164,693.02, respectively. The 1949 income derived from sales of tangible property was approximately five one-thousandths of one per cent of the total income of petitioner for that year. The volume of each of the other types of businesses mentioned in the questions certified, which hereinafter may be referred to as incidental businesses, as compared with the entire volume of business done by petitioner, may very well be visualized from the approximate percentage of income of each of the particular businesses with the entire income of the business of petitioner for the year 1949: Rent electric properties (associates), five ten-thousandths of one per cent; rent electric properties (other than associates), three one-thousandths of one per cent; sales of water and water power, three one hundred-thousandths of one per cent; servicing customers' installations, six ten-thousandths of one per cent; lease of physical properties, four one hundred-thousandths of one per cent; miscellaneous, two one-hundredths of one per cent.
The Public Service Commission of West Virginia, being the public body having statutory powers to supervise and regulate public utilities within the State, with respect to certain of their affairs, and especially with reference to the rates to be charged by them, has promulgated certain rules and regulations governing the manner of keeping the accounts of electric utility companies. Petitioner in the instant proceeding strongly contends that the manner in which it is required, by such regulations, to keep its accounts and report its income with reference to the delayed payment charges, and with reference to each of the incidental businesses mentioned, indicates very strongly that the "Public Service Commission of this State recognizes each of the activities of the plaintiff to be part of the normal and customary business of an electric light and power company * * *." The purpose of the Public Service Commission in requiring that the income accounts of the public service company be kept in a certain manner is primarily, if not solely, for the purpose of assisting that commission in its duty to determine fair and just rates to be charged by the utility company, and can be of little, if any, assistance in the construction or application of taxing statutes.
Our attention is directed to principles usually applied in aid of construction of statutes, some of which apply especially to construction of taxing statutes. We have concluded, however, that the statute under consideration requires no construction, at least in so far as the instant proceeding is concerned. See Douglass v. Koontz, Tax Commissioner, W.Va., 71 S. E.2d 319. No contention is made as to any ambiguity of any section of the statute, except Section 2d, and the question there turns upon whether certain income of the company is included within the term "sales and demand charges". Clearly, the income upon which the tax is based is the income derived from the public service furnished, including not merely a price for electric energy, sold and delivered, but such segments *867 of the utility business as may be necessary or proper in the economic and efficient management and control thereof. The income upon which the tax is based must be derived from the public service or utility business, not some other business, and must be included within the term "sales and demand charges". This much being clear, we need determine only whether certain income constitutes part of the income received from the public service furnished by the utility company; that is, we must determine the application of the statute as it relates to certain subject matters, according to the clear intent of the statute. See Douglass v. Tax Commissioner, supra; Charleston & Southside Bridge Co. v. Kanawha County Court, 41 W.Va. 658, 24 S.E. 1002.
Considerable discussion is contained in the briefs with reference to what income is included within the term "sales and demand charges", used in Section 2d, and made the sole basis for determining the amount of income to be used in levying the tax therein provided. In its setting and context we think its meaning definite. True, the word "sales" and the word "demand" each has different uses. Here they are used as relating only to charges as to a single business, an electric utility business, and only as to certain income, the income from the public service furnished.
In Department of Public Works, ex rel. City of Spokane v. Spokane Gas & Fuel Company, P.U.R.1925A 165, we find this language: "`(b) The demand charge consists of that part of company expense incidental to providing and maintaining a production transmission, and distribution system of sufficient capacity to render service as required. The principal elements in this cost are the fixed charges, among which are interest, taxes, and depreciation on the necessary plant, and part of the operating and maintenance expense of the physical property. The demand charge is distributed among the customers in proportion to the demand which is contracted for by each customer, and hence in the proportion which each customer contributes towards the creating of the total demand expense.'"
In Re Idaho Power Company, P.U.R. 1920E 209, it is stated: "Demand charge is simply a readiness-to-serve charge. In other words, it is an amount paid to the power company by the customer for the privilege of having a certain portion of the company's capacity reserved for the use of the particular customer whenever he may call for it. Whether he calls for the service or not, the demand charge must be paid, because the service is held for him. However, a readiness to serve means an ability to serve. The customer pays for, and the company must receive its payment through, service rendered. When a utility holds part of its capacity for the service of a customer, it performs a very real service for which it is entitled to payment. But this service is of full value only when the energy to meet the customer's full demand is available when made."
In City of Dearborn v. Michigan Consol Gas Co., 297 Mich. 388, 297 N.W. 534, 537, it is stated: "Was the penalty charge which was substituted for the discount plan a violation of the franchise, or is it to be considered a part of the new rate schedule? In the franchise, consumers were entitled to a discount of 10 cents per 1,000 cubic feet, if the bills were paid before a certain date. The substitution, after the expiration of the rate schedule and under the new rates, was that consumers who did not pay their bills before a certain date, would be assessed an additional charge of 10 cents per Detroit gas unit consumed, or approximately 20 cents per 1,000 cubic feet more than the consumers who were not delinquent in payment. This substitution only affects the rates. It is apparent that a penalty or discount affects the amount of net return to the company, and has a definite connection and influence upon the fair rate of return which the company should earn. This is considered by the company in establishing base rates. If the discount plan is followed, the base rate is comparatively higher; if a penalty is charged, the base rate does not include cost of collection of delinquent bills. We consider such substitution merely as a part of the charge for gas service, and properly to be considered as a part of the rates promulgated; and this was within the jurisdiction of the commission." Webster's *868 International Dictionary, Second Edition, gives but a single meaning to the word "demand" when used in connection with delivery of electric energy: "8. Elec. The load (in kilowatts) of an individual consumer, or power plant or the like, averaged over a period of time."
Since the intention of the statute is clear and the term "sales and demand charges" has a definite meaning, and since only that part of the income within "sales and demand charges" for the public service furnished, may be used as the base for the tax levied by Section 2d, we face only the problem of determining whether income from a particular source is income derived from the public service furnished, on the one hand, or whether it is merely incidental to or independent of the public service, on the other hand.
The principal question which gave rise to the justiciable controversy herein relates to the delayed payment charges. Is such income a part of the income of the utility company, within the term "sales and demand charges", and subject to the tax provided in Section 2d, as contended by the tax commissioner? As previously pointed out, the delayed payment charges, sometimes described as discounts, sometimes as penalties, and sometimes as "Customers' Forfeited Discounts and Penalties", are additional or further charges made by the utility company against customers who fail to pay the regular utility charge within a specified time. In petitioner's brief, the charge is illustrated by quoting a tariff provision sometimes used: "Delayed Payment Charge. The above tariff is net if account is paid in full within ten (10) days of date of bill. On all accounts not so paid, an additional charge of 5% of the amount billed (but not less than $.10) will be made." The same rate charge, including the delayed payment charge, is made against each customer. Only the action of the customer in paying promptly, or in failing to pay promptly, determines whether the additional charge shall be collected. Undoubtedly, the purposes of making the charge, as indicated, are to facilitate collection of all charges, to decrease the total collection costs and thereby lessen the utility rate to each customer, and to require the customers who make necessary the additional service, the collection of delinquencies, pay the expense of such additional service. The additional charge requirement serves as an incentive to all customers to pay promptly, not merely those who become delinquent. These facts, we believe, necessarily show that the delayed payment charge is for the public service rendered by the utility company. True, it is a separate or distinct segment of the business, but clearly a necessary segment. No public service could be furnished long if charges therefor were not collected. Unless the delayed payment charges are collected from delinquent customers, the rate of the utility return would necessarily have to be changed. Being a necessary part of the public service furnished, it is included in the "sale" to the customers for, as pointed out above, the word "sale" includes not only the electric energy delivered, but all the necessary or proper costs of effecting delivery. The collection of charges is just as essential to the continuance of delivery as is the manufacture of electric energy. Moreover, the delayed payment charges are authorized and controlled by the public service ratemaking body, and consideration is given thereto in the determination by that body of fair and just rates to be charged by the public utility, and fair and just returns to be allowed on its investment. It seems clear, therefore, that the income from the delayed payment charges constitutes part of the income received by the utility company for the service furnished the public, is included within the term "sales and demand charges", and should be taxed at the rate provided in Section 2d.
Certain income is received by petitioner for tangible property sold and delivered by it, and the tax commissioner strongly contends that such income should be taxed under Section 2c, under which section a tax is levied upon the privilege of selling tangible property. It is the contention of the company that the sale by it of tangible property is for the sole purpose of furthering the use and sale of electric energy, thereby increasing the volume of *869 business of the public utility company, and that the income therefrom should not be taxed under any section of the business and occupation tax statute, since that income is merely incidental to the utility business, and not included within "sales and demand charges". The petition filed herein alleges that such income of petitioner "* * * arises from activities lawfully, normally and customarily engaged in by all substantial electric light and power companies known to the plaintiff and, in fact, practically every electric light and power company engaged in such business within this State." Since the demurrer to the petition admits the truth of the allegations, we must necessarily treat the income of the utility, received from the sale of tangible property, as incidental to, and in furtherance of, the public service furnished. Clearly, then, such income is not part of the "sales and demand charges". But should it be considered as income from an independent, separate and distinct business, and used as the base for assessment of a tax, under some section of the business and occupation tax statute, other than 2d? We have concluded that it should not be made the base or measure of any tax under any section of the statute.
The conclusion reached is strengthened by the statutory definition of the word "business", found in Code, 11-13-1: "`Business,' as used in this article, shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect. * * *" The principal business engaged in by petitioner, of course, is the utility business, but the sale of tangible property is incidental to that business and is an activity "engaged in with the object of gain or economic benefit", although the gain or benefit may be indirect. The "activity", the business of selling tangible property, engaged in by the utility, is made part of the business of the utility, but the income therefrom is not included within "sales and demand charges", expressly made the base for the tax. It is also significant that the Legislature, as to all businesses except electric utilities, used "gross income" as the base for the tax levied. While we can not examine the purpose of the Legislature in taxing only the income of electric utilities derived from "sales and demand charges", and relieving electric utilities from taxation of income received from sources other than "sales and demand charges", it may be helpful to point out that the selling of tangible property by an electric utility is usually not primarily for profit to be derived from such sales, but for the purpose of increasing the quantity of electric energy to be sold, by increasing the use of electric appliances. It may be, and probably is, true that the business of selling tangible property, as conducted by an electric utility company, is at cost, or even at a loss, but it is a justifiable operation for the purpose of increasing the income later to be received as "sales and demand charges". The Legislature may have reasoned that the amount of taxes to be received, because of the increased income of the utility, from "sales and demand charges", would eventually exceed any tax charged against the income from the incidental business; or it may have reasoned that the income from the incidental business, operated without profit, should not be used as a base for any tax. However that may be, it is obvious that the legislature intended that the income to be used as the basis for the tax levied under Section 2d be derived from "sales and demand charges".
The tax commissioner further contends that to tax other businesses as to income derived from selling tangible property, and not the utility for the same privilege, would constitute discriminatory taxation, in violation of the provisions of the Constitution requiring that taxes be equal and uniform; and also, that such action would be violative of due process. We think no such result follows. It is manifest that the sale of particular types of tangible property by the utility company, for the sole purpose of furthering its public service business, is not on the same plane with businesses selling tangible property solely for profit. This, we think, would justify the different methods of imposing the tax. See In re Charleston Federal Savings & Loan Ass'n [Tax Assessments], 126 W.Va. *870 506, 30 S.E.2d 513; Charleston & South-side Bridge Co. v. County Court, supra. Moreover, taxes need be equal and uniform only as to the same class of businesses, and no contention is made that all electric light and power companies are not taxed alike by the statute. See In re National Bank of West Virginia at Wheeling, W.Va., 73 S.E.2d 655; In re Tax Assessments, supra. Of course, if the public utility company operates a business not taxed under Section 2d, and not incidental to or in furtherance of its public service business, it would be subject to the tax imposed by the statute upon like businesses. See City of Phoenix v. Kasun, 54 Ariz. 470, 97 P.2d 210, 127 A.L.R. 84; Halifax Paper Co. v. Roanoke Rapids Sanitary District, 232 N.C. 421, 61 S.E.2d 378.
In discussing the tax imposed on delayed payment charges, we have attempted to demonstrate the type or source of income included within "sales and demand charges", and taxed under Section 2d. In discussing the business of the petitioner as it relates to sales of tangible property, we have attempted to demonstrate the type or source of income of petitioner not included within "sales and demand charges", and not taxed directly under any section of the business and occupation tax statute. What has been said, we believe, sufficiently answers any question as to other classes of businesses mentioned in the questions certified. As before noted, we must, under the pleadings, consider each of such businesses as being operated by petitioner in the furtherance of its public service business. We do not, of course, attempt to lay down any definite rule governing the question as to every case. Whether a certain business is incidental to the utility business and in furtherance thereof, or whether it is an independent business, must necessarily be determined from the facts peculiar to each case. Even should we be permitted to consider the question as it relates to such other businesses, the record does not sufficiently inform us of the facts necessary for that purpose. For illustration, we are not informed of the circumstances under which "sales of water" are made. Does the utility merely sell impounded water in excess of that needed in its public service business, or does it impound water and sell it for a profit, for the sole use of some irrigation project? True, we may compare the total amount alleged to have been received from the sale of water with the total amount of the income of petitioner; but, whatever the comparison, we would still be uninformed as to whether that particular portion of the income was derived from a business incidental to the public service, or independently thereof. The percentage of the income of a public service business derived from a certain activity may sometimes be of aid in determining whether such activity is merely incidental to the public service business, or independent thereof, but will seldom, if ever, control such determination.
From what has been said, it necessarily follows that the rulings of the Circuit Court of Kanawha County must be affirmed in part, reversed in part, and the proceeding remanded to that court.
Rulings affirmed in part; reversed in part; remanded.
BROWNING, J., not participating.
HAYMOND, President (dissenting in part).
I concur in the decision of the majority in this case to the extent that it holds that the tax levied against the plaintiff, an electric light and power company, under Section 2d, Article 13, Chapter 11, Code, 1931, as amended, is determined solely by the amount of income received by it from sales and demand charges, and that its income from an activity merely incidental to its public service business is not included within its income from sales and demand charges and is not subject to any tax levied by any section of Article 13 of Chapter 11, Code, 1931, as amended. I can not, however, agree to the holding of the majority, as expressed in point 3 of the syllabus, that delayed payment charges collected by an electric light and power company are part of and included within its income from sales and demand charges; and on that point I register my dissent.
*871 In holding, erroneously I think, that the income derived from delayed payment charges is included in income of an electric light and power company received from its sales and demand charges, the majority disregards and violates firmly established and widely recognized rules of statutory construction and the equally well settled rule that a statute which is clear and free from ambiguity is not open to judicial interpretation.
The plaintiff insists, the defendant admits, and the majority holds, that the provisions of Section 2d, Article 13, Chapter 11, Code, 1931, as amended, are clear and unambiguous; yet, in the face of its pronouncement to that effect, the majority, in disregard of the rule, proceeds to interpret that section of the statute and, in so doing, erroneously construes the plain words "sales and demand charges", each of which has a well defined and commonly accepted meaning and significance, to include and embrace delayed payment charges which in any proper sense, are neither sales nor demand charges but are, in fact, separate, distinct and totally different items.
When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts. State v. Epperly, 135 W.Va. 877, 65 S.E.2d 488; Douglass v. Koontz, W.Va., 71 S.E. 2d 319; Hereford v. Meek, 132 W.Va. 373, 52 S.E.2d 740; State ex rel. Department of Unemployment Compensation v. Continental Casualty Company, 130 W.Va. 147, 42 S.E.2d 820; State ex rel. McLaughlin v. Morris, 128 W.Va. 456, 37 S.E.2d 85; State v. Patachas, 96 W.Va. 203, 122 S.E. 545; 50 Am.Jur., Statutes, Section 225. If the legislative intent is plain, the courts should give the unambiguous language of a statute full force and effect, and should not attempt to read into the provision a meaning which is not intended. Hereford v. Meek, 132 W.Va. 373, 52 S.E.2d 740; Barnhart v. State Compensation Commissioner, 128 W.Va. 29, 35 S.E.2d 686; State v. Conley, 118 W.Va. 508, 190 S.E. 908. The intent of the Legislature, when it plainly appears, must govern. Pettry v. State Compensation Commissioner, 111 W.Va. 409, 163 S.E. 16; State v. Crawford, 83 W.Va. 556, 98 S.E. 615. "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." Hereford v. Meek, 132 W. Va. 373, 52 S.E.2d 740.
In 50 Am.Jur., Statutes, Section 225, the text contains this pertinent language: "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning. In the case of such unambiguity, it is the established policy of the courts to regard the statute as meaning what it says, and to avoid giving it any other construction than that which its words demand. The plain and obvious meaning of the language used is not only the safest guide to follow in construing it, but it has been presumed conclusively that the clear and explicit terms of a statute express the legislative intention, so that such plain and obvious provisions must control. A plain and unambiguous statute must be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity." The words of a statute should be given their ordinary and familiar significance and import and they should be accorded their general and proper use and their usual and common acceptation. Hereford v. Meek, 132 W.Va. 373, 52 S.E. 2d 740; State ex rel. Department of Unemployment Compensation v. Continental Casualty Company, 130 W.Va. 147, 42 S. E.2d 820; Miners in General Group v. Hix, 123 W.Va. 637, 17 S.E.2d 810; Norfolk and Western Railway Company v. Mingo County Court, 123 W.Va. 461, 15 S.E.2d 574; Board of Education v. Hudson, 112 W.Va. 365, 164 S.E. 296; Moran v. Leccony Smokeless Coal Company, 122 W.Va. 405, 10 S.E.2d 578, 137 A.L.R. 1007; State ex rel. Herald v. Surber, 83 W.Va. 785, 99 S.E. 187; Waldron v. Taylor, 52 *872 W.Va. 284, 45 S.E. 336; Daniel v. Simms, 49 W.Va. 554, 39 S.E. 690; Slack v. Jacob, 8 W.Va. 612.
The pertinent provision of the statute here involved, Section 2d, Article 13, Chapter 11, Code, 1931, as amended, is in these words: "Upon any person engaging or continuing within this State in any public service or utility business, * * * there is likewise hereby levied and shall be collected taxes on account of the business engaged in equal to the gross income of the business multiplied by the respective rates as follows: Street and interurban and electric railways, one per cent; water companies, four per cent, except as to income from municipally owned water plants; electric light and power companies, four per cent on sales and demand charges for domestic purposes and commercial lighting and three per cent on sales and demand charges for all other purposes, except as to income from municipally owned plants producing or purchasing electricity and distributing same; * * *." (Emphasis supplied.) By the quoted language of this provision of the statute the Legislature expressly fixed "sales and demand charges" of electric light and power companies, instead of their gross income, as the base or the measure of the tax levied and imposed by the statute, and, by using those plain and explicit terms, the Legislature clearly intended that they should be given the meaning which they plainly express.
It is significant that the quoted provision does not contain the words "delayed payment charges" or any other like or equivalent terms; and it must be presumed that any mention of charges of that character was purposely omitted. If the Legislature had intended to include in the tax base delayed payment charges of the use of which by electric light and power companies it is presumed to have had full knowledge, it could, and undoubtedly would, have included such charges in the tax base by incorporating in the statute an appropriate provision to that effect. Instead the Legislature, in enacting the statute, expressly limited the base for the tax imposed on electric light and power companies to the income received by them from sales and demand charges and, by so doing, it excluded all other factors and sources of income from the designated tax base.
As the Legislature, in fixing the basis of the tax imposed upon electric light and power companies, mentioned only sales and demand charges as the constituents of the tax base, the maxim "expressio unius est exclusio alterius," which means that the express mention of one thing implies the exclusion of any other thing, applies. This maximum is of ancient origin and extends to all written instruments, including contracts, deeds, statutes and constitutions which require judicial interpretation. Douglass v. Koontz, W.Va., 71 S.E.2d 319; Harbert v. County Court of Harrison County, 129 W. Va. 54, 39 S.E.2d 177; State ex rel. Downey v. Sims, 125 W.Va. 627, 26 S.E.2d 161; Taylor v. Taylor, 66 W.Va. 238, 66 S.E. 690; Tate v. Ogg, 170 Va. 95, 195 S.E. 496. Affirmative specifications in a statute exclude implication. Beverlin v. Beverlin, 29 W.Va. 732, 3 S.E. 36. If, therefore, the foregoing provision of the statute is subject to judicial interpretation which, as already pointed out, it is not because clear and free from ambiguity, delayed payment charges and their equivalents are necessarily excluded from the base upon which the tax against electric light and power companies is imposed.
The words "sales", "demand charges", and "delayed payment charges" are clear and unambiguous and each of them has a definite and commonly understood and accepted meaning among persons who engage in the business conducted by electric light and power companies. None of those words or expressions contains or is synonymous with either of the others. The word "sale" ordinarily means a contract by which the absolute or general ownership of property is transferred from one person to another person for a price or a sum of money. Webster's New International Dictionary, Second Edition, Unabridged, G & C Merriam Company, 1940, page 2203; Black's Law Dictionary, Fourth Edition, page 1503. In Fickeisen v. Wheeling Electrical Company, 67 W.Va. 335, 67 S.E. 788, 27 L.R.A., N.S., 893, concerning the sale of electric current by Wheeling Electrical Company *873 to Bridgeport Electrical Company which current, in a broken service wire, caused the death of plaintiff's intestate, this Court said: "* * * the contract was that the Wheeling company was to deliver electricity to the Bridgeport company at the Ohio end of the bridge on the wires of the Bridgeport company. That was the point of delivery. Thus there was a sale of electricity by the Wheeling company to the Bridgeport company. Wherein does the sale of this electricity differ from a sale of other commodities or things? It is personal property capable of sale. Terrace Co. v. San Antonio Co., 1 Cal.App. 511, 82 P. 562. When, under the law of sales, the Wheeling company delivered electricity into the wires of the Bridgeport company at the bridge end the title and possession of the Wheeling company ceased and the Bridgeport company took title and possession then and there."
When an electric light and power company delivers electric current to its consumer at the designated point of delivery, at the rate prescribed by the tariff to which the company is subject, the sale of the electricity is completed. It is not affected or defeated by the failure of the consumer to pay the purchase price promptly or at all. The delayed payment charge, a penalty or an additional charge, imposed and collectible only if the consumer does not pay the independently fixed rate on or before a designated date, is not a part or a factor of the completed sale and does not enter into it. The sale is concluded before the delayed payment charge accrues or becomes effective and whether it becomes effective at all is dependent upon the failure of the consumer to pay promptly the rate fixed by the tariff. The purpose of the delayed payment charge, if and when it becomes operative, is not to increase the rate at which the electricity has previously been sold but is to enforce the payment of the tariff rate and to defray the expense of collecting that rate. It is not designed or intended to increase or change the prescribed rate in any respect whatsoever. The relation between the demand charge, which is a readiness to serve charge, and the delayed payment charge, is the same as that between the charge at the tariff rate for the sale of electricity and the delayed payment charge which is separate and distinct from, and not a part of, either "sales" or "demand charges" and can not properly be interpreted to be covered by, embraced in, or a part of, "sales and demand charges".
The delayed service charge is merely incidental to the business conducted by an electric light and power company. It is as much so in fact as the other incidental activities mentioned and discussed in the majority opinion which correctly holds that such incidental activities are not subject to the tax imposed by Section 2d or by any other section of Article 13, Chapter 11, Code, 1931, as amended. For that reason that holding of the majority should, in my opinion, apply to delayed payment charges received by the plaintiff and exonerate and relieve such charges from any tax imposed by any section of Article 13 of the statute. The decision of the majority, that the activities which the defendant contended were taxable under Sections 2c, 2h and 2i of the statute are merely incidental to the business of the plaintiff under the allegations of its petition, which on demurrer are taken as true, and, as such, are not subject to any tax imposed by Article 13, is authority for and sustains my view that delayed payment charges, as an incidental activity of the business of the plaintiff, are likewise exempt from any tax imposed by that article of the statute.
In interpreting the applicable provision of Section 2d of the statute and in construing the words "sales and demand charges" to include delayed payment charges which, as already pointed out, are separate and distinct from sales and demand charges and are entirely omitted from the statute, the majority adds to the statute words which the Legislature, in enacting it, did not incorporate in it. When a statute is clear and free from ambiguity, as here, the incorporation of additional words, terms, or provisions is not for the courts but for the Legislature. If the statute, which the majority in point 1 of the syllabus says is to be applied as written and not construed where the intention is made clear by the language used, is to be changed or rewritten to include *874 delayed payment charges, that function should be performed by the Legislature and not by the courts. Chesapeake & Ohio Railway Company v. Bullington's Adm'r, 135 Va. 307, 116 S.E. 237; Lewis v. Commonwealth, 184 Va. 69, 34 S.E.2d 389; Anderson v. Commonwealth, 182 Va. 560, 29 S.E.2d 838. Courts may interpret the law but may not enact it. They are not permitted to rewrite statutes or to incorporate new words in a plain statutory enactment. They should interpret the law as it is written. 17 M.J., Statutes, Section 33. When the intention of the Legislature can be discovered from the statute, it is not permissible to add to, or to subtract from, the words used in the statute. Chesapeake & Ohio Railway Company v. Hewin, 152 Va. 649, 148 S.E. 794; Posey v. Commonwealth, 123 Va. 551, 96 S.E. 771; 17 M.J., Statutes, Section 42.
The interpretation placed upon the applicable provision of Section 2d also violates a well established rule which governs the construction of statutes relating to taxation which are ambiguous or of doubtful meaning and, for that reason, are subject to judicial interpretation. That rule is that statutes which impose taxes must be construed strictly and most strongly against the taxing authority and in favor of the taxpayer and that all doubts as to their meaning must be resolved in favor of the taxpayer. Hukle v. City of Huntington, 134 W.Va. 249, 58 S.E.2d 780; Darnall v. Board of Park Commissioners, 124 W.Va. 787, 22 S.E.2d 542; Vinson v. County Court of Wayne County, 94 W.Va. 591, 119 S.E. 808; Fry v. City of Ronceverte, 93 W.Va. 388, 117 S.E. 140; Fairmont Wall Plaster Company v. Nuzum, 85 W.Va. 667, 102 S.E. 494; City of Fairmont v. Bishop, 68 W.Va. 308, 69 S. E. 802; State ex rel. Dillon v. County Court of Braxton County, 60 W.Va. 339, 55 S.E. 382; Harvey Coal & Coke Company v. Dillon, 59 W.Va. 605, 53 S.E. 928, 6 L.R.A., N.S., 628; Bott v. Commonwealth, 187 Va. 745, 48 S.E.2d 235; Williams v. City of Richmond, 177 Va. 477, 14 S.E.2d 287, 134 A.L.R. 833; Commonwealth v. Virginia Electric & Power Company, 159 Va. 655, 167 S.E. 440; Commonwealth v. P. Lorillard Company, 136 Va. 258, 118 S.E. 323; Brown v. Commonwealth, 98 Va. 366, 36 S. E. 485; Fox's Adm'rs v. Commonwealth, 16 Gratt. 1; 51 Am.Jur., Taxation, Section 316. Application of this firmly settled rule of statutory construction does not justify or sustain the construction adopted by the majority but, on the contrary, denies and condemns it.
For the reasons indicated, I would hold that delayed payment charges received by the plaintiff are not included within its sales and demand charges and are not subject to the tax imposed by Section 2d, Article 13, Chapter 11, Code, 1931, as amended. In consequence, I would affirm the action of the Circuit Court of Kanawha County in overruling the demurrer of the defendant to the petition of the plaintiff.