# CHARLESTON.

## WALDRON v. TAYLOR.

Submitted January 1, 1902. Decided December 13, 1902.

1. DESCENDANT—*Issue.*

   The word "descendant" as used in section 13, chapter 78, Code, means one who proceeds from the body of another, however remotely, and is co-extensive with "issue" but does not embrace others not of issue.  (p. 286).

2. STATUTES—*Construction.*

   Where the words of the statute are not ambiguous but have a clear and definite meaning, it is not within the province of the courts to go further by extending its provisions so as to include persons who are clearly excluded by the statute itself.  (p. 288).

3. ADVANCEMENT—*Parent Intestate.*

   The true notion of advancement is giving by anticipation the

whole or a part of what it is supposed a child will be entitled to on the death of the parent making it and dying intestate. (p. 288).

4. HOTCHPOT—*Descendants—Advancement.*
   The doctrine of *hotchpot* is designed by the statute to benefit descendants only, advancements are not to be brought into distribution or partition in respect to any other persons. (p. 289).

Error to Circuit Court, Mingo County.

Action by M. H. and Hester A. Waldron against W. G. Taylor *et als.* Judgment for defendant and Hester A. Waldron brings error.

*Reversed.*

SHEPPARD & GOODYKOONTZ, and R. H. HOYLE, for appellant.

J. B. WILKINSON and J. S. MILLER, for appellees.

McWHORTER, JUDGE:

On the 7th day of July, 1887, James Starr granted and conveyed to John Starr, his brother, in consideration of the love he had for him, a certain tract or parcel of land on Pigeon Creek, in the county of Logan, containing three hundred acres, more or less; "To have and to hold the same of his natural lifetime then to Alex. Shelby Starr, Sarah A. Starr and Rosa M. Starr, heirs of John Starr, to have and to hold forever with all its appurtenances, except the rent for the year 1887," and providing, "That the parties of the second part is not to sell or *expose* of said land for six years." Said James Starr died in the year 1887, intestate, without issue, seized of valuable real estate situate in Logan County, since Mingo County. He left surviving him two brothers, John and Samuel, and three sisters, Ruth, who married Evans Ellis, Sally, who married Alexander Runyon and Martha, who married Andrew Dempsey, and that such of them as survived him and the descendents of them who died prior to his decease were the next of kin to said James Starr. John Starr and Ruth Ellis survived said James Starr while Samuel, and the other two sisters died prior to his death, all leaving children surviving them. Before his death John conveyed to his son, William, all his interest in said estate of

his brother James Starr, deceased, and William by deed of the 23d of August, 1897, together with Jenia, his wife, conveyed said interest in consideration of one hundred and thirty-six acres of land exchanged therefor to Hester A. Waldron. Said Hester A. Waldron also acquired by purchase and conveyance the interest of Levi Starr and of the children of Samuel Starr, the brother of James in said estate of James Starr. G. W. Taylor also acquired by purchase and conveyance various interests of the heirs at law of said estate. M. H. Waldron likewise so acquired an interest therein. M. H. Waldron instituted his suit in the circuit court of Mingo County for the purpose of settling the estate in full and dividing the lands among the parties entitled thereto or the proceeds of the sale thereof. The cause was referred to a commissioner to ascertain and report among other things, of what lands James Starr died seized and possessed, and the amount and location and value thereof; whether the same were susceptible of division in kind and who were the present owners of the same, and who were entitled to participate in the partition thereof, and to what extent. The commissioner made his report to which the defendant, G. W. Taylor and Hester A. Waldron each filed several exceptions. Among other exceptions filed by said Taylor, and the only one which it is necessary to be noticed here is the following: "Because said commissioner erred in finding that the said Hester A. Waldron was entitled to 167-700 of said real estate, when she should have been allowed 27-700 thereof, unless she elects to bring into *hotchpot* the fee simple value of the advancement made to John Starr by James Starr, Sr., in his life time, with the accrued interest thereon and if she so elects to bring the same into *hotchpot,* then she is entitled to 167-700 thereof." Which exception was sustained by the court, and the exceptions endorsed by the said Hester A. Waldron are as follows: "1—It is not affirmatively shown that the tract of land alleged to have been given to John Starr was in fact given to him. 2nd. That said John Starr being a collateral and not a lineal descendant is not required to account for any advancement received by him from said James Starr, deceased. 3d. That the evidence does not justify said commissioner in the finding the estate advanced (if the court should consider the said estate an advancement) at the sum fixed by him, or anything like so great an

amount. 4th. For other errors apparent upon the face of the record and report: and therefore prays judgment of the court whether she shall be required to account for said so called advancement or any part thereof." Which exceptions were overruled. On the 15th of September, 1900, the cause was heard when it was decreed among other things as follows: "And it further appearing to the court that the said John Starr was entitled to one-fifth of said real estate, but had received in the life time of his brother James Starr, by way of advancement a conveyance of three hundred acres of land for life, remainder to three of his children in the deed of conveyance mentioned, and that the fee simple value of said advancement was worth two thousand dollars, and that said John Starr in his life time conveyed to the said Hester A. Waldron his entire undivided interest in the real estate of which James Starr died seized and possessed; but the court is of opinion that before the said Hester A. Waldron shall be allowed to come in and participate in the partition of said real estate on account of the conveyance to her of the said John Starr interest in said real estate, she should be required to bring into *hotchpot* with the whole of the real estate descended, in the bills and proceeding mentioned, the fee simple value of the said three hundred acres of land advanced to the said John Starr and his three children aforesaid, to-wit: the sum of two thousand dollars, with interest thereon from August 7, 1887, the date of the death of the said James Starr, and the said Hester A. Waldron declining and refusing to bring into *hotchpot* with other real estate descended, the said sum with its accrued interest, it is therefore adjudged, ordered and decreed that she be not allowed to take or receive anything further out of the real estate so descended, under and by virtue of the conveyance to her of the said John Starr interest therein," from which decree the said Hester A. Waldron appealed, assigning the following errors:

"1st. The court erred in sustaining the exceptions of the defendant Taylor to the report of Commissioner Hatfield and requiring your petitioner to bring into *hotchpot* the value of the fee simple estate and not the life estate, and in not assigning in said partition the one-fifth interest derived from John Starr.

2d. The court erred in overruling the exceptions of your

petitioner to said report of Commissioner Hatfield, and requir-
ing your petitioner to bring the value of the estate given by
John Starr into *hotchpot,* as the same was a gift and not 'an
advancement,' as the statute only required advancements made
to 'descendants' to be brought into *hotchpot,* and the said
John Starr being a brother, could not be a descendant of said
decedent, James Starr.

3d.  The court erred in directing J. S. Miller, as special com-
missioner, to distribute the proceeds of the sale of the land and
the balance of six hundred and forty-nine dollars and seventy-
three cents, on account of certain timber cut from said lands,
as indicated in said decree, to the extent of the said one-fifth
interest claimed by petitioner.

4th.  For other errors apparent, etc."

The question involved here is whether the conveyance by
James Starr to his brother John Starr, under our statute, sec-
tion 13, chapter 78, Code, can be treated as an advancement to
a descendant and the value of which shall be brought into *hotch-
pot* by the holder before he can be allowed to participate in the
distribution of the estate of which the decedent died possessed
as a co-parcener or distributee.  What was the intention of the
law makers in the enactment of section 13, of chapter 78?  The
section reads as follows:  "Where any descendant of a person
dying intestate as to his estate or any part thereof, shall have
received from such intestate in his lifetime, or under his will
any estate real or personal, by way of advancement, and he or
any descendant of his, shall come into the partition and dis-
tribution of the estate with the other parceners and distributees,
such advancement shall be brought into *hotchpot* with the
whole estate, real and personal, descended or distributable, and
thereupon such party shall be entitled to his proportion of the
estate, real and personal."

Appellees claim that the word descendant in said section is
given a broader meaning by the statute than it had under the
common law or than ordinarily attaches to it.  And in order
that it may have the meaning which appellees would give it
they termed them "Statutory descendants" and to show the
purpose of the legislature in giving it such meaning in
their brief they give us the legislation on it from the time
of its incorporation into the Code of 1819 down through the

codes of 1849, 1860 and as we have it at present; and show that in 1819 the word children was used instead of the word descendant: "When any of the children of a person dying intestate shall have received" etc., and in the code of 1849 and since, it was given the broader and more comprehensive term, descendant: "When any descendant of a person dying intestate shall receive," etc. They then ask "Why substitute the term 'descendant' in these later codes for the term 'children' in the former?" This is easily accounted for. We are told in Bouv. Law Dic.: "The term children does not ordinarily and properly speaking, comprehend grandchildren or issue generally; yet sometimes that meaning is affixed to it in cases of necessity; * * * And it has been held to signify the same as issue in cases where the testator, by using the terms children and issue indiscriminately showed his intention to use the former term in the sense of issue so as to entitle grandchildren" etc. Evidently the word children used in its common and ordinary sense was deemed by the legislature not broad enough to include grandchildren and more remote descendants; hence, the change of words from children to descendants. The same authority defines "descendants" as "Those who have issued from an individual, including his children, grandchildren and their children to the remotest degree." Ambl. 327; 2 Bro. Ch. 30, 230; 1 Roper, Leg. 115; A. & E. E. of L. (2d Ed.) 399, gives the definition of descendant, "A person who is descended from another. Any one who proceeds from the body of another, however remotely, is a descendant of the latter. The word is the converse or opposite of 'ascendant' rather than of 'ancestor;' taking all these words in the legal technical sense 'descendants' cannot be construed to include any but lineal heirs without clear indication of a contrary intention. Thus the term does not include collateral relations nor ancestors." Page on Wills, sec. 527, says: "A descendant is one who descends as offspring, however remotely; correlative to ancestor or ascendant. The term includes the most remote lineal offspring, and is practically synonymous with 'issue' in its legal meaning; hence it excludes collateral relations; nor does it include relatives in the ascending line." In *Baker* v. *Baker,* 8 Gray (Mass.) 101, it is held: "The word descendants in a will cannot be construed to include any but lineal heirs without clear indications in the will of the

testator of his intention to extend it"; and in *Armstrong* v. *Moran,* 1 Bradf. (N. Y.) 314 : "A legacy to a sister's child is not a legacy to a descendant of the testator's. By descendant is not meant any relative to whom in some possible contingency property might descend, but lineal descendants—issue of the body." In *Tichenor* v. *Brewer,* 98 Ky. 349, "The word 'descendants' does not embrace collateral relations," citing Ripalje & L. Dic.; *Van Beuren* v. *Dash,* 30 N. Y. 393 and Bouv. L. Dic. In *Bates* v. *Gillett,* 132 Ill. 287, it is held: "Children are *eo nomine* descendants but the latter are not necessarily children. A descendant is one who proceeds from the body of another however remotely. The word is co-extensive with 'issue' but does not embrace others not of issue. It does not embrace next of kin or heirs at law, for these phrases comprehend persons in the ascending line and may also include collaterals. When the word 'descendant' is used in a will it means only lineal heirs in the direct descending line from the person named unless there is a clear indication of intention on the part of the testator to enlarge its meaning. It is a good term of description in a will." Evidently the purpose of the legislature in changing from "children" to "descendants" was to so far enlarge the term as to clearly include grandchildren and more remote issue. If it had been the intention to have made it still more comprehensive so as to include all the heirs at law of the intestate it would have been so expressed in the statute by inserting after the word descendant, in section 13 of chapter 78, the words "or heirs at law," or other words indicating the intention of the legislature to extend it beyond the issue of the intestate and to include collateral relatives. When the words of the statute are not ambiguous but have a clear and definite meaning it is not within the province of this Court to go further and amend the law by extending the provisions of it to include persons who are clearly excluded by the statute itself. In *Hawlin* v. *Osgood,* 1 Redf. 409, it is held: "Brothers and sisters cannot take under the term 'descendants.' The term does not mean next of kin or heirs at law generally but it means the issue of the body of the person named of every degree, as children, grandchildren and great-grandchildren." In *Chinn.* v. *Murray,* 4 Grat. 348, Judge Allen, at page 397, quoting Chief Justice Parker in *Osgood* v. *Breed,* 17 Mass. 356, says: "The

true notion of advancement is giving by anticipation the whole
or a part of what is supposed a child will be entitled to on the
death of a parent." Appellees rely very strongly for support in
their position upon the case of *Kyle* v. *Conrad,* 25 W. Va. 760,
and quote from the opinion of JUDGE GREEN at page 774:
"Statutes requiring heirs and distributees of a person who dies
intestate to bring into *hotchpot* in the distribution of the estate,
what had been received by them as advancements from such
person in his life time, have always been construed very liberally
to carry out the purpose of such acts, to produce equality in the
distribution of the intestate's estate among those bearing the
relation to him, which in the absence of a will must be presumed
to have been the wish of the deceased person. And if by fol-
lowing closely the letter of the statute this its object will be
defeated, the courts have never hesitated to disregard the letter
of such statutes and to require that to be brought into *hotch-
pot,* which the letter of the statute does not require, but which
its spirit does require." A little further quotation in the same
connection from JUDGE GREEN's opinion would have given us a
little more light upon the matter in question, when he con-
tinues: "By the word advancement used in the statute is meant
a gift by a parent to a child or descendant for the purpose of
advancing him or her in life." *Barber* v. *Taylor,* 9 Dana 84, is
a good illustration of the liberality which the courts have always
exercised in construing such statutes, in order to carry out their
spirit, even though in so doing the letter of the statute is dis-
regarded. The Kentucky statute was copied from the fifteenth
section of the act of Virginia of 1785, directing the course of
descents, and was thus worded: "That when any children of
the intestate or their issue shall have received from the intestate
in his life time any real estate by way of advancement, and
shall choose to come into partition with other parceners, such
advancement shall be brought into *hotchpot* with the estate
descended. The act requiring advancement of personal estate
to be brought into *hotchpot* was substantially the same." He
then goes on to say that the Kentucky statute was worded al-
most exactly as the act of Virginia of 1785, and that the case
of *Barber* v. *Taylor* amounted to a construction of our statute.
He quoted at some length the reasoning of the court in that
case. In the said case a man and wife in 1814 had settled on

a tract of land belonging to her father under his verbal assurance that he would convey it to his son-in-law. The wife died in 1833 and her father soon afterwards made the deed to his son-in-law, reciting in the deed that the land was part of the portion he had given his son-in-law with his daughter, and died intestate and without having made any writings evidencing the gift to the other children, of the lands on which they had settled in the same way. This gift and conveyance of the land to the son-in-law was held to be an advancement to the daughter; and her children coming into partition with the other heirs of the grandfather must bring it into *hotchpot* at its value at the time of conveyance. This Kentucky case, as well as the case of *Kyle* v. *Conrad* which was quoted by JUDGE GREEN, was treating of advancements made to the children of the intestate. In all the authorities cited and in my investigations into further authorities I have not been able to find where the question raised in case at bar, that is, "Whether a gift made to a collateral relative constitutes an advancement which such relative will be required to bring into *hotchpot* in order to share in the partition of the estate of the giver, such collateral relative being an heir at law of such estate under a statute similar to ours" has been raised or passed upon. All the Virginia and West Virginia cases cited relate exclusively to advancements to lineal descendants. Doubtless the owner of property dying without issue and intestate could during his life time so dispose of portions of his estate to persons who would probably be his heirs at law, by deed and make such provision in such deeds as that the vendees could not participate in the partition or distribution of his estate without accounting for the bounty so received by them, but our statute is not broad enough to cover such cases. 1 Am. & En. Enc. Law 760 (2d Ed.) The term adcanvement in thus defined: "An advancement is a transfer of property from a person standing *in loco parentis* towards another, to that other in anticipation of the share of the donor's estate which the donee would receive in the event of the donor's dying intestate," citing *Cawthon* v. *Coppedge,* 1 Swan (Tenn.) 487; *Rickenbacker* v. *Zimmerman,* 10 S. Car. 110; 30 Am. Rep. 37; and in *Clark* v. *Willson,* 27 Md. 693, Weisel, J., said: "An advancement is a giving by anticipation the whole or part of what it is supposed a child will be entitled to on the death of the parent making

it and dying intestate;" and in Brightley's Eq. sec. 389, it is said that an advancement is "A pure and irrevocable gift by a parent in his life time to his child on account of such child's share of the estate after the parent's decease." This was quoted with approval in *Miller's Appeal,* 31 Pa. St. 377; *Yundt's Appeal,* 13 Pa. St. 575; *Green* v. *Brown,* 38 N. E. 519 (Ind.); *Dillman* v. *Cotts,* 23 Ind. 440. An advancement differs from a gift inasmuch as it is charged against the child; and from a debt, in that there is no enforcible liability on the part of the child to repay during the lifetime of the donor, or after his death except in the way of suffering a deduction from his portion in the estate. Unlike an ademption it has to do with intestate estate only." 1 Am. & E. Enc. of Law 761, and cases there cited. Prof. Miner in his Institutes, Vol. 2 at p. 513, (4th Ed.), says: "An advancement is a gift by a parent to a child or descendant for the purpose of advancing him in life." And page 514, the same writer say: "The doctrine of *hotchpot* is founded upon the idea of equality in the division amongst descendants of the ancestral property, unless the ancestor shall himself *by will* duly executed, think fit to make a difference, when therefore he makes to one of them a gift of a nature to advance him in life in pursuance of the policy in question, it ought *prima facie* to be presumed to have been so intended; and that while the circumstances and the declarations of the donor *accompanying* the gift, may well be adduced to repel or confirm such presumption, yet that no subsequent declaration from him should be allowed any effect, nor indeed to be admitted in evidence at all." And further at page 517 he says: "As the doctrine of *hotchpot* is designed by the statute to benefit descendants only, advancements are not to be brought into distribution or partition in respect to any other persons." The third assignment is controlled by the same principles. For the reasons herein given the decree will be reversed and the cause remanded for further proceedings to be had in the circuit court of Mingo County in pursuance of the rulings herein and according to the rules governing courts of equity.

*Reversed.*

BRANNON, JUDGE, (*dissenting*) :

I grant that the word "descendant" ordinarily means one who has descended from another in direct line, not a collateral; but the question is, what does the word mean in section 13, chapter 78 of our own Code? That question is not answered by any decision in the Virginias. I further grant that a great volume of law seems to look against the opinion here ventured, holding that only lineal descendants of a decedent can be called to account for advancements, or demand the benefit of them. I grant, too, that the definition of the word "advancement" generally given is to the effect that it is a pure and irrevocable gift by a parent to his child on account of his supposed share in the parent's estate after the latter's death, by the statute of descendants and distribution. The definition of those words given generally confines advancement to lineal heirs. However, I do find some authority for the construction which I would give our act. In *Harley* v. *Harley*, 57 Md. p. 342, the opinion gives the word advancement a broader sense, saying that "in legal contemplation, an advancement is simply giving by anticipation the whole or part of what it is supposed the child or party advanced would be entitled to receive on the death of the party making the advancement." The word "party" is used. Thornton on Gifts and Advancements, sec. 539, reads: "The donor must stand in such blood relation to the donee that the latter inherits a part of the former's estate, if he were to die intestate." "The doctrine of advancement has been extended to cover transactions between uncle and nephew, aunt and niece, and older and younger brothers." 1 Am. & Eng. Ency. L. 775. I have no access to the authorities cited in the encyclopedia. But I do not rest my opinion on those authorities. I go upon our statute. It is a general principle that "the law of advancements is a part of the law of descents." 1 Dembitz on Land Titles, 249. Therefore, statutes of descents and advancements should be construed together, they being in *pari materia*. But in our Code descents, distributions and advancements are dealt with by one and the same chapter. One section sheds light on another. Section 13, chapter 78, says: "When any descendant of a person dying intestate as to his estate, or any part thereof, shall have received from such intestate in his life time or under his will any estate, real or personal, by way of advancement, and

he or any descendant of his, shall come into the partition and distribution of the estate with other parceners and distributees, such advancement shall be brought into *hotchpot* with the whole estate, real and personal, descended or distributable." The section says the donee must be a descendant of the intestate. Who is that descendant? I say it is any one who shares by law as heir or distributee, lineal or collateral, because the chapter makes heirs out of both collateral and lineal kin. Section 1 tells who that descendant is in saying that when any person shall die intestate owning real estate it shall "descend and pass" in certain order to certain persons, lineals and collaterals. It is descendable to all. Any one sharing is a *descenter,* to coin a word; that is, he is a person who by that chapter takes by descent, a descendant, within its meaning. Does the use of the two words, "descend and pass," operate against this construction on the theory that "descend" applies to lineals, "pass" to collaterals? I think not, but think that both words were used out of caution to cover all cases. At common law land went by descent only to lineals, and descent meant the casting by law of realty on lineals, and when collaterals were made heirs it was feared that the word descent, having a certain import, might not be held to apply to both lineal and collateral relatives, and both words were used. They both mean the same. The law having changed, the meaning of the word descendant under that law changed with it. All say that the purpose of the law of advancement is to attain equality among heirs. Should we not give that word descendant found in the descent statute a construction to secure such equality? This can only be done by making it include both lineal and collateral heirs. The other construction inflicts enormous inequality and injustice. It would make the son account for every dollar of advancement; but would allow a brother to keep his advancement in his pocket, and not account for it to his brothers, and yet share equally with them in the estate. JUDGE GREEN in *Kyle* v. *Conrad,* 25 W. Va. p. 774 said: "Statutes requiring heirs and distributees of a person who dies intestate to bring into *hotchpot* in the distribution of the estate, what had been received by them as advancements from such person in his life time, have always been construed very liberally to carry out the purpose of such acts, to produce equality in the distribution of the intes-

tate's estate among those bearing the relation to him, which in the absence of a will must be presumed to have been the wish of the deceased person. And if by following the letter of the statute this its object will be defeated, the courts have never hesitated to ·disregard the letter of such statutes and to require that he be brought into *hotchpot,* which the letter of the statute does not require, but which its spirit does require." The letter of the statute is against me, but not its spirit and purpose. Why stick in the bark to promote injustice? I would give section 13 an application co-extensive with the chapter, make it apply to all cases where an advanced person, collateral or lineal, takes a share in the estate. Section 25 says it shall. be no bar in making title by "descent" that an ancestor was alien. The word "descent" here includes both collateral and lineal descent. "Descendant," under this statute, does not refer to line of relationship or blood, but to one who takes by descent or distribution. A collateral is not a. descendant in blood or line of kin, but he is a statutory descendant, as counsel appropriately calls him; he is made a descendant by the statute for its purpose. Even a father or mother is a descendant under this statute, because under circumstances they take by descent. Up to the code of 1849 the word advancement was "children," but that code substituted the word "descendant." A change was intended. Some say the change was made to include grandchildren; but, by general construction, the word children included them. It was intended to widen, and I think it reasonable to say that it was intended to cover the whole scope of the law of descent and distribution, and make any one inheriting account for advancements and thus secure equality.