FIRST NATL. BK. OF CINCINNATI *v.* GAINES.

[Cite as First Natl. Bk. of Cincinnati v. Gaines, 15 Ohio Misc. 109.]

110

(No. 2589—Decided November 1, 1967.)

Probate Court of Hamilton County.

*Messrs. Frost & Jacobs,* for plaintiff.

*Messrs. Cohen, Baron, Todd & Hogan,* and *Mr. James Q. Doran,* for Robert Burns Shook et al.

*Messrs. Graydon, Head & Ritchey,* and *Mr. Robert L. Black, Jr.,* for James M. Atkins and Cynthia Davis.

*Mr. James W. K. Johnson,* for issue of Mamie Drummond, deceased.

*Messrs. Paxton & Seasongood,* for William T. Bahlman, Jr., trustee for unknown and unborn persons.

*Mr. Wells Woodley,* for Irene Drummond Alexander.

*Mr. Stanley J. Aronoff,* guardian ad litem, for James M. Atkins, Jr., a minor, et al.

*Mr. Alton E. Purcell,* guardian ad litem, for Martha L. Simmons, minor, et al.

*Mr. Leo Weinberger,* guardian ad litem, for Gigi Monique Alexander, minor, et al.

*Messrs. Dinsmore, Shohl, Coates & Deupree* and *Mr. James O. Coates,* for South Western Publishing Company, defendants.

DAVIES, J.   The First National Bank of Cincinnati, as trustee under the will of James W. Baker, deceased, has filed a "Second Amended Petition for Directions Respect-

ing Trust," which trust was established in said decedent's will.

The evidence shows that James W. Baker died, a resident of Hamilton County, Ohio, on September 25, 1938, survived by his wife, Willie B. Baker, who was his sole heir at law. Under the terms of his will, executed on January 28, 1938, he devised the residue of his estate to The First National Bank of Cincinnati, as executor and trustee, for the following objects and purposes:

"Item 4,—To pay over to my wife, Willie B. Baker, during her life, either out of the income or from the principal of my estate, the sum of Twelve thousand ($12,000.00) Dollars per annum, in such amounts and at such times as she may elect. Should, however, the amount designated be not sufficient for her needs at any time, upon her written statement to that effect, setting forth that she requires additional funds for her personal expenses, my executor and trustee is hereby authorized and empowered to advance to her such additional sums as she may request. It being my intention to provide my wife at all times with sufficient funds to insure her comfort and happiness even though there be nothing left of my estate at the time of her death.

"Item 5,—It is my desire that my executor and trustee continue to pay the annual allowance of One thousand ($1,000.00) Dollars, which I now pay to my wife's sister, Annie Martin, of Ashville, North Carolina, said sum to be paid in equal quarterly installments on the first day of January, April, July and October, during her lifetime, and to cease at her death.

"Item 6,—My executor and trustee is to pay to my sister, Mrs. A. B. Martin, the sum of One thousand ($1,000.00) Dollars per annum, during her life, payable quarterly. Said payments are to begin at the maturity of a certain promissory note I executed to her in payment of her interest in the family homestead at Knoxville, Tennessee, and maturing seven and one-half (7½) years from its date, payments are to cease at her death.

"Item 7,—My executor and trustee is to pay to Mrs. Vernon Gaines (nee Marguerite Drummond) Six hundred ($600.00) Dollars, annually, in equal semiannual install-

ments, each year during her life, or until the expiration of the trust herein created. The foregoing semi-annual payments are to begin at the maturity of my note which she holds for the payment of her share of the homestead in Knoxville, Tennessee, and maturing seven and one-half (7½) years from its date.

"Item 8,—My said executors and trustees shall sell all of my real estate as early as practicable after my decease, and the proceeds thereof shall be invested in United States, State, County or Municipal Bonds.

"Item 9,—My said executor and trustee, or its successors in trust, is hereby authorized and empowered, without the intervention of any court, to sell, transfer, and dispose of any or all of my personal estate for reinvestment or otherwise, to sell and convey in fee simple, either at private or public auction, all, or any part of my real estate, without any purchaser being required to see to the proper application of the purchase money of such real estate, or the proceeds of such personalty, and to execute and deliver therefor, all deeds, transfers and other legal instruments to fully carry out the provisions of this, my will. All reinvestments are to be made in United States, State, County or Municipal Bonds.

"Item 10,—After the death of my said wife, should any of my estate remain in the possession of my executor and trustee, said trust is to be continued in full force and effect for a further period of ten (10) years thereafter, and my said trustee, or its successors in trust, shall retain in its possession all of the assets of my estate, together with the income therefrom, and shall have all the powers originally delegated herein, and for the objects and purposes set forth in Items 11, and 12, herein, to wit:

"Item 11,—To pay to Mrs. Leslie Foster, who has been my wife's companion for years, One thousand ($1,000.00) Dollars annually, payable quarterly, during the period of the trust created herein, or until her death. And should she still be living at the termination of said trust, my said trustee or its successors in trust, is to pay over to her the sum of Five thousand ($5,000.00) Dollars, to be hers absolutely.

"Item 12,—After the death of my said wife, such part of my estate as may be necessary shall be used by my said trustee, or its successors, for the purpose of defraying the expense of a college education for such of the decendants (sic) of my sisters, namely: Alice Martin, Knoxville, Tennessee, and Mamie Drummond, deceased, formerly of Knoxville, Tennessee, and my wife's sisters, namely: Birdie M. Atkins, Asheville, North Carolina, Annie Martin, Asheville, North Carolina, and Allie M. Shook, deceased, formerly of Scottsburg, Alabama, when they arrive at college age and signify their desire to take advantage of the opportunity provided under this clause of my will.

"Item 13,—My said trustees, or its successors in trust, are hereby authorized and empowered to expend the sum not exceeding Four thousand ($4,000.00) Dollars toward a college education of each of such decendants (sic) who may desire to avail themselves of the opportunity herein expressed. The aforesaid amount shall be paid in sums of not more than One thousand ($1,000.00) Dollars per annum, and shall be paid to the educational institution which may be selected by the individual concerned.

"Item 14,—Upon the termination of the ten (10) years after the death of my said wife, my trustees shall convert all of the remaining assets of my estate into cash, and apportion the same equally among my sisters and my wife's sisters, hereinbefore named, surviving at such time, or, to the issue of those who are deceased, the issue of said deceased person or persons to take the parent's share, in equal parts. And in the event of the death of any of my sisters, or of my wife's sisters, without issue surviving, the share of such deceased person shall be equally divided among all the persons herein named, or their issue, share and share alike, surviving at the time of such distribution; and said trust shall terminate and be at an end.

"Item 15,—All persons receiving any of the benefits, or sharing in any manner my estate, shall be of the blood of my sisters, or of my wife's sisters, born in lawful wedlock, and no legally adopted child, or designated heir shall participate therein."

The testator's wife's sister, Annie Martin, died in

1945, and the testator's sister, Alice Martin, died in 1951. Neither Annie Martin nor Alice Martin were survived by blood descendants or blood issue. The testator's sister, Mamie Drummond, died on July 7, 1930, survived by three children, Robert Drummond, who died in 1963, without blood issue, Marguerite Drummond Gaines and Irene Drummond Alexander, both of whom are alive. Irene Drummond Alexander has four living children and five living grandchildren. Allie M. Shook, the sister of the testator's wife, died on January 22, 1934, and now has surviving her two living children, eight living grandchildren, and twenty-six living great-grandchildren. Birdie M. Atkins, the testator's wife's sister, died March 24, 1964, survived by a son, James M. Atkins, two grandchildren, and two great-grandchildren, all of whom are alive. Willie B. Baker, the testator's wife, died on March 18, 1965. Mrs. Leslie Foster is now deceased.

At Mr. Baker's death in 1938, the inventoried value of his probate estate was $523,720.94. The corpus of the trust estate now consists of 150 shares of South Western Publishing Company stock which is worth approximately $16,770,000. The accumulated trust income account, which consists of municipal bonds, treasury bills, and a small amount of cash, has a total value of $550.000. The gross income derived from the trust estate in 1966 was $222,664. The net income of the trust estate for 1966 was $112,002, after deducting federal income tax, professional fees, and distribution of $4375 made to four students who availed themselves of the educational opportunity provided for in Item 12 of the will.

Based upon the aforementioned facts, conflicting claims have been made by and on behalf of various descendants and issue of Mamie Drummond, Birdie M. Atkins and Allie M. Shook concerning what present and future distribution should be made of the income and corpus of the James W. Baker trust and the identity of the distributees. Some of these claims are listed as follows:

(A) Scholarship benefits under Items 12 and 13 should be made available to any and all descendants of the testator's sisters and of his wife's sisters born prior to March

18, 1975, provided that such descendants signify their desire to take advantage of such benefits within a reasonable time after arriving at "college age," whether that be before or after March 18, 1975.

(B) The trustee holds assets in excess of those required both to make distributions and payments under Items 7, 12, and 13 of the will prior to March 18, 1975, and to pay proper administration expenses of the trust until that date, and that a distribution of assets in excess of such requirements should now be made, *per stirpes,* among the issue of the blood born in lawful wedlock to the sisters of the testator and his wife, pursuant to Item 14 of the will, and that the assets should be distributed in kind, or if distribution in kind cannot be made, the trust assets should be converted into cash prior to the court's order of distribution.

(C) The trustee is neither required nor permitted to pay or distribute at any time prior to March 18, 1975, any of the assets held in the trust to any person or persons other than the $600 annual payment to Mrs. Vernon Gaines pursuant to Item 7 of the will and such additional amounts as are necessary to defray the expenses of college educations as provided in Items 12 and 13 of the will and to pay the proper expenses incurred in administering the trust.

(D) The testator's intention, after providing for his widow and others, and providing for the "scholarships" in Items 12 and 13, was to grant a vested interest in the trust estate to the blood issue of his and his wife's named sisters as determined ten years after his wife's death, viz. March 18, 1975, but, since there is more than ample principal and income in the trust to meet all requirements of the trust prior to March 18, 1975, there should be a present partial distribution of principal *per stirpes* to those who are presently the blood issue of the named sisters, the property distributed to be subject to divestment in the event the distributee to whom partial distribution has been made is not alive on March 18, 1975.

(E) As an alternative to a present distribution of principal, the court shall order the trustee to distribute to the beneficiaries holding vested interests under Item 14

*per stirpes* the excess of income not required to be distributed or otherwise disbursed from the widow's death until final distribution of assets upon final termination of the trust on March 18, 1975.

(F) Unless the excess income is currently distributed each year, the testator's principal beneficiary until March 18, 1975, will be the federal government because of large income taxes due on the excess earnings from the trust after making the distributions provided for in the will.

(G) The latest time the trust could vest was the date of the wife's death because the only reason indicated by Mr. Baker's language for the ten-year term is his purpose to educate descendants who qualify for college entrance during this period and to pay Mrs. Gaines $600 annually under Item 7 of the will.

(H) The court should order a present partial termination of the trust with distribution in kind, reserving assets necessary to guarantee a college education for those making claim to such education within a period of ten years following the widow's death because a partial termination of the trust is equitable since the material purpose of the trust would not be thwarted, and the interests of non-consenting beneficiaries would not be adversely affected. It was contended that a partial termination of the trust can be decreed even if all of the beneficiaries do not consent (some may be under age or unascertained) if such decree does not defeat the purpose of the trust or adversely affect the interests of the non-consenting beneficiaries.

(I) At the end of ten years following the wife's death, distribution should be made as follows:

(a) 1/5 to the issue of Mamie Drummond, per capita.

(b) 1/5 among the issue of Birdie M. Atkins, per capita.

(c) 1/5 among the issue of Allie M. Shook, per capita, and

(d) 2/5 among the combined issue of Mamie Drummond, Birdie M. Atkins, and Allie M. Shook, per capita.

In its petition the plaintiff, as trustee, states it "is in doubt about and seeks the directions of this court with respect to" four questions "about this trust." These four

questions, together with the court's "directions," follow:

"1. Which descendants of James W. Baker's sisters, namely, Alice Martin and Mamie Drummond, and Willie B. Baker's sisters, namely, Birdee (sic) M. Atkins, Annie Martin and Allie M. Shook, are now, or, upon signifying to this plaintiff as Trustee their desire to take advantage of the opportunity provided under clause 12 of James W. Baker's Will, will be entitled to receive payments from the trust property pursuant to the terms of Items 12 and 13 thereof?"

Items 12, 13, and 15 of James W. Baker's will provide that after the death of his wife, which occurred on March 18, 1965, such part of his estate as may be necessary shall be used by his trustee for the purpose of defraying the expense of a college education for such of the descendants, and who are of the blood of, his sisters, Alice Martin and Mamie Drummond, and his wife's sisters Birdie M. Atkins, Annie Martin, and Allie M. Shook, born in lawful wedlock, *when they arrive at college age and signify their desire* to take advantage of the opportunity of having the trustee expend the sum of not exceeding $4,000 toward a college education to be paid in sums of not more than $1,000 per annum to be paid to the educational institution selected by the individual concerned. Item 14 of the will, which is more fully discussed under the trustee's question 2, provides that upon the termination of ten years after the death of the testator's wife, the trustee shall convert *all* of the remaining assets of the trust estate into cash, and apportion the same among the beneficiaries described in Item 14. We find, under the circumstances which have developed since the testator's and his wife's death—and for the reasons which are discussed under the trustee's question 2, which follows, it was the testator's intention, as shown by the language used in his will, that his trustee should pay to any educational institution, which by general acceptance means, and the court finds to be, any college or university accredited by a regional accrediting association, such as The North Central Association of Colleges and Secondary Schools, the sum of One thousand ($1,000) Dollars per annum for a period not exceeding four years on behalf of any

lineal blood descendant, born in lawful wedlock, however remote, of Mamie Drummond, Birdie M. Atkins, and Allie M. Shook, who has arrived at college age and his signified his or her desire on or before March 18, 1975, to take advantage of the educational offer contained in the will, and has matriculated as, and maintains the status of, a full time student, in any such described college or university, all such annual payments to terminate on March 18, 1979.

"2. Is this plaintiff as Trustee under the Will of James W. Baker, deceased, required or permitted to pay at any time prior to March 18, 1975, out of the assets held in the trust at the death of Willie B. Baker, in addition to the $600 payable annually to Mrs. Vernon Gaines pursuant to Item 7 of said Will, any amount or amounts to any person or persons for any purpose other than to defray the expense of a college education as provided in Item 12 of said Will and to pay the proper expenses incurred in administering the trust, as provided by law?"

Courts in Ohio and elsewhere, including this court, often have been asked to determine when and in whom property in testamentary and other trusts vests and to identify the distributees who are entitled to receive such property and the income derived therefrom. Many of these cases have been cited in the briefs submitted in the Baker case.

The Supreme Court of Ohio, in the case of *Casey* v. *Gallagher,* 11 Ohio St. 2d 42, decided on June 28, 1967, considered a will construction case in which the facts are similar to those found in the Baker case.

In the *Gallagher case,* John Gallagher, whose will was executed on June 2, 1921, and who died on January 6, 1924, created a trust in his will for the benefit of his wife, Rose, who died in 1923, and his three chidlren, Patrick Gallagher, who died on February 16, 1935, survived by two sons, Angus and *John P. Gallagher,* who died on June 28, 1952, devising his estate to Mary Casey and others who were not blood heirs, Mary E. Renner, who died on November 9, 1947, survived by five children, still alive, and Elizabeth Deibel who is still alive, but whose only son, *Christopher Deibel,* died without issue on September 8, 1926. The Gal-

lagher trust provided that upon the death of the last sur-
vivor of the testator's children (Elizabeth Deibel), the
trust was to terminate and the trust corpus was to be con-
veyed by the trustees "to the lawful heirs of my said
children, who are of my blood an equal share thereof to the
heirs of each of my chidren." It was contended on behalf
of those claiming as devisees of Patrick Gallagher and next
of kin Elizabeth Deibel that in using the word, "heirs,"
the testator meant merely his grandchildren as a class, and
that, therefore, remainders vested in each member of the
class who was alive at the testator's decease, and that the
grandchildren alive at his decease were not required to be
alive at a later date to be entitled ultimately to take. Some
of the grandchildren contended that distribution of the
corpus of the estate should be made on a per capita rather
than a *per stirpes* basis.

The court first pointed out (p. 46) that "It is settled
beyond all possible doubt that the function of the court in
a will construction case is to determine and apply the tes-
tator's intention, as expressed in the language of the whole
will, read in the light of the circumstances surrounding its
execution."

The court, in considering the claims of Mary H. Casey
and others claiming through the estates of John P. Galla-
gher and Christopher Deibel, considered many cases, in-
cluding those cited in the Baker case, which have estab-
lished the rule of law which favors the early vesting of es-
tates, and the usual rule of construction for the time of
determining a person's heirs as the date of such person's
death. The court, however, pointed out that while these
rules of construction would yield the result Mary H. Casey
seeks, practically every rule of construction applied in the
determination of the question of whether a vested or con-
tingent remainder is created is subject to the qualification
"unless the intent of the testator * * * appears to the con-
trary."

The court considered the Ohio cases, which are cited
on page 51 of the opinion, in which determination of a tes-
tator's heirs has been made at a time later than his death,
and stated "it is logical, and this court holds, that" the

remainders "should vest in the heirs of testator's children, determined at" the date of the death of testator's last surviving child. The court stated "It may be safely laid down that of two equally probable interpretations of a will, that shall be adopted which prefers the family and kindred of the testator to other strangers," and "therefore, where there is no language of countervailing meaning or other evidence of a different intent, testator's well-manifested intention that only blood relatives should take under the will must be given effect."

The court pointed out that the testator did not use the word, "heirs," to mean his grandchildren as a class, but rather meant those designated by the statute of descent and distribution to inherit from each of his children as of the time of application of the statute, and that it is the heirs of testator's children who are to take under the will and those claiming as heirs of a particular child of testator must have survived such child to sustain their claim, for no one is the heir of a living person. The court stated (p. 50) that "It is clear, therefore, that neither Christopher Deibel, who predeceased his mother, Elizabeth Deibel, nor any one claiming through him can claim an interest in the trust corpus at Elizabeth Deibel's death. Christopher acquired only a contingent interest in the corpus of the trust on testator's death, which interest can never become possessory, because the contingency of his being an heir of Elizabeth is impossible of fulfillment. Further, he left no lineal descendants who could claim directly as heirs of Elizabeth."

The question concerning the distribution of current income, which was provided for in the Gallagher will, is not present in the Baker will.

The pertinent part of the syllabus in *Casey* v. *Gallagher*, reads as follows: "1. The legal meaning of the word, 'heirs,' denominating those designated by the statute of descent and distribution to inherit from the ancestor as of the time of application of such statute, will be followed unless it clearly and affirmatively appears that the testator intended a different meaning. (*Holt* v. *Miller*, 133 Ohio St. 418; *Cultice* v. *Mills*,

97 Ohio St. 112, followed.) 2. In a remainder to the 'heirs' of a designated ancestor, unless a contrary intent is manifested, the time of the determination of such heirs is the date of death of the designated ancestor. 3. In such case, a contrary intent is manifested and no interest vests in the heirs of testator's children until the time of distribution, where the testator expressly provided for the distribution of the corpus of a testamentary trust at the death of the survivor of his children 'to the lawful heirs of my children who are of my blood,' in accordance with his general plan that property passing under his will remain in his bloodline, and where the determination of the heirs of each child at such future time of distribution is necessary to effectuate such general plan. (*Ohio National Bank of Columbus, Trustee,* v. *Boone,* 139 Ohio St. 361, distinguished.)''

The synonyms ''descendant,'' ''issue,'' and ''offspring'' are ordinarily used to refer to those who have issued from an individual and include his children, grandchildren and their children to the remotest degree. No distinction is ordinarily made between ''heir'' and ''next of kin.'' 1 Page on Wills, Sec. 1. 4, p. 12; *Rowe* v. *Cullen,* 177 Md. 357, 9 A. 2d 585; *Waldron* v. *Taylor,* 52 W. Va. 284, 45 S. E. 336. A descendant is ''one who descends, as offspring, however remotely; correlative to ancestor or ascendant.'' The term includes the most remote lineal offspring and is practically synonymous with the word issue in its primary meaning. 4 Page on Wills, Sec. 34.23, p. 451. The term ''issue'' in its normal and accepted sense means descendants of the blood and born in lawful wedlock. *In re: Semon's Will,* 91 N. Y. S. 2d 203, 206; *In re Cavarly's Estate,* 119 Cal. 406, 51 P. 629; *Chevatel* v. *Schreiner,* 148 N. Y. 683, 43 N. E. 166; *Parrish* v. *Mills,* 101 Tex. 276, 106 S. W. 882. The word ''issue'' in testamentary disposition will be given primary meaning of heirs of body and descendants, or meaning synonymous with ''child'' according to the testator's intention as deduced from the entire will, considered in the light of circumstances presumed to be known to the testator. *Ansonia Nat. Bk.* v. *Kunkel,* 105 Conn. 744, 36 A. 588, 590.

''Issue'' includes all persons who have descended

from a common ancestor, and unless controlled by the context it means lineal descendants. *Third Nat. Bk.* v. *Noel*, 183 Tenn. 349, 192 S. W. 2d 825; *Wright* v. *Tuscaloosa*, 236 Ala. 374, 182 So. 72. Whether a gift to "issue" is a gift per capita or per stirpes, and to what extent it may be classified under either heading, depends, in the first place, upon the meaning of "issue." If it is equivalent to "heirs of the body," it imports succession per stirpes, and representation. Since it is equivalent to "heirs" it implies a reference to the statute of descent and distribution, which, in turn, implies a taking per stirpes. See 4 Page on Wills, Sec. 36.15, p. 569.

This court in the case of *Kiljan* v. *Hoover*, 37 O. O. 2d 38, held that "where the testatrix has detailed in her will what distribution of income is to be made from the trust estate, has clearly outlined the times and conditions under which distributions of principal are to be made from the trust, and has carefully specified the events which shall determine the termination of the trust, a probate court will not terminate the trust until the specified events have occurred."

In the Baker will, the testator provided (Item 14) that "Upon the termination of the ten (10) years after the date of my said wife, my trustees shall convert all of the remaining assets of my estate into cash, and apportion the same equally among my sisters and my wife's sisters hereinbefore named, surviving at such time, or, to the issue of those who are deceased, the issue of said deceased person or persons to take the parent's share in equal parts. And in the event of the death of any of my sisters, or of my wife's sisters, without issue surviving, the share of such deceased person shall be equally divided among all the persons herein named, or their issue, share and share alike, surviving at the time of such distribution and said trust shall terminate and be at an end." Under Item 15 of the will, all beneficiaries are limited to those of the blood of the testator's or of his wife's sisters born in lawful wedlock.

We believe, and hold, it was the intention of James W. Baker, as shown in the language contained in his will, that no interest in his trust estate should vest in his and

his wife's sisters' "issue" until March 18, 1975, ten year after his wife's death.

James W. Baker gave nothing outright to any one until the final distribution of his estate on March 18, 1975. He did provide for payments to his wife during her life, to his wife's sister, Annie Martin, during her lifetime, to his sister, Mrs. A. B. Martin, during her life, to Mrs. Vernon Gaines during her life or until the expiration of the trust, and to Mrs. Leslie Foster during the period of the trust, or until her death. He made no provisions for distribution of income to any person. Since no person is entitled to any part of the corpus of the estate until March 18, 1975, no person is entitled to any part of the income in the trust estate before that date.

The controlling object in the construction of a will is the ascertainment and declaration of the intention of the testator; and the changed value of money and property, the changed circumstances, and needs of the beneficiaries, do not justify a court in modifying the provisions of a will to meet the changed circumstances and conditions. *Union Sav. Bk. & Tr. Co.* v. *Alter*, 103 Ohio St. 188; *Toledo Trust* v. *Toledo Hospital*, 174 Ohio St. 124.

Until March 18, 1975, the trustee is required to pay for the educational scholarships under Items 13 and 14, as directed by the court under the trustee's Question 1, to make the annual $600.00 payments to Mrs. Vernon Gaines pursuant to Item 7 of the will, and to pay the proper expenses incurred in administering the trust.

In determining who are the "issue" of the testator's and his wife's sisters under Items 14 and 15, we find that in the second sentence found in Item 14 of the will that "in the event of the death of any of my sisters, or of my wife's sisters, without issue surviving, *the share of such deceased person shall be equally divided among all the persons herein named,* or their issue, *share and share alike,* surviving at the time of such distribution * * *" (emphasis added), the phrase *share and share alike* is in apposition with the words *the share of such deceased person shall be equally divided among all the persons herein* named. "The persons herein named" were the testator's and his wife's

sisters, and not "the issue" of said deceased person or persons.

We find that the meaning of the word "issue" as used by Mr. Baker in Items 14 and 15 of his will denotes the lineal descendants, per stirpes, of the blood born in lawful wedlock of his or his wife's deceased sisters as determined by the statutes of descent and distribution in effect on March 18, 1975, at which time the trust estate will vest in such "issue," subject to the obligation of the trustee to pay for the scholarships provided for in Items 12 and 13 of the will until March 18, 1979, as found in the "directions" to the trustee's Question 1.

In making distribution to such "issue" the trust estate, including all accumulated income, shall be divided into as many equal parts as there are direct lines of living "issue" of the testator's or his wife's deceased sisters, and one of each such parts shall be distributed to the living lineal descendants, per stirpes, of the blood born in lawful wedlock of any such deceased sister who has any such lineal descendants alive on March 18, 1975. As an illustration, if present conditions continue until March 18, 1975, the trust estate would be converted into cash, as directed by the testator in Item 14 of his will, and would be divided at that time into three equal parts, and one of each equal parts would be distributed to the living "issue," per stirpes, of Mamie Drummond, deceased, Birdie M. Atkins, deceased, and Allie M. Shook, deceased.

"3. If the question No. 2 above is answered in the affirmative, is this plaintiff as trustee required or permitted to distribute any of the assets held by it in kind to persons entitled to receive assets on any such distribution?"

See court's "directions" under trustee's Question 2.

"4. If this plaintiff in its discretion considers it prudent, may the plaintiff as trustee under the will of James W. Baker, deceased, at any time or from time to time prior to March 18, 1975, sell any or all of the shares of South Western Publishing Company, subject to the restriction contained in said company's by-laws and printed on the face of the certificate?"

The trustee's Question 4 presents a moot question if the trustee exchanges the 150 shares of South Western Publishing Company stock held by it in accordance with its authorization contained in the following order of this court entered on September 14, 1967:

"This cause came on for hearing upon the motion of The First National Bank of Cincinnati, trustee under the will of James W. Baker, deceased, plaintiff herein, for an order with respect to the trustee's power and authority to execute a certain agreement for exchange of stock and plan of reorganization proposed by Scott, Foresman and Company and to exchange the 150 shares of South-Western Publishing Company held by the trustee on the terms and conditions set forth therein.

"The court finds that all interested parties have been duly served and are properly before the court.

"After careful consideration of the pleadings, the evidence and the arguments of counsel, the court, being fully advised, finds that the trustee has the power and authority under the last will and testament of James W. Baker, deceased, to execute said agreement and to exchange said 150 shares of South-Western Publishing Company on the terms and conditions set forth therein.

"It Is Therefore Ordered that the First National Bank of Cincinnati, trustee under the will of James W. Baker, deceased, is authorized and directed to execute the said agreement for exchange of stock and plan of reorganization and to exchange said 150 shares of South-Western Publishing Company held by it on the terms and conditions set forth therein."